## SUPREME COURT.

THE PEOPLE *ex rel.* HENRY A. WEEKS, Lieutenant-Colonel of the 12th Regiment, 1st Division of the New-York State Militia, agt. JOHN EWEN, Brigadier-General of the 4th Brigade.

The supreme court has the power of *redressing* or *remedying* any usurpation or abuse of *authority* committed by any individual, or association of individuals, within the state. And this power extends over the *military* organization of the state.

But this court has no power to interfere with the legitimate exercise of authority, and will refrain from employing the power which it does possess, particularly by mandamus in doubtful cases, or on inexpedient occasions.

The governor of the state, as commander-in-chief of the military forces of the state, has power to *consolidate* companies and regiments.

And the practical application of this power of consolidation is not such as to de-prive an officer of any constitutional rights; as it does not deprive him of office or privileges contrary to sections 2 and 5 of the 11th article of the constitution.

Nor is it the effect of such consolidation to place an officer, deprived of his command thereby, over other officers who had no voice in his election. He is legally deprived of his command (though not of his office), and has, therefore, no

officers to command. But, even if it did place him in command over officers who had no voice in his election, this would not be unconstitutional.

*New - York Special Term, May,* 1859.

APPLICATION for a peremptory mandamus.

CLERKE, Justice. The Governor, in his capacity of commander-in-Chief of the Military forces of the state, issued an order on the 16th of March last, for the consolidation of the companies, composing the 12th Regiment of the 4th Brigade of the 1st Division of the State Militia, with the companies of the 10th Regiment of the same Brigade and Division, for the purpose of forming one regiment with the requisite numerical strength; both regiments, separately, having fallen, at the two last annual inspections, below the standard required by law, and the good of the service.

The order was issued upon the recommendation of General Sandford, the Major-General of the Division, and of General Ewen, the Brigadier-General of the 4th Brigade. On the 24th of March last, Gen. Ewen, as required by the order of his superior officer, issued his orders to complete the consolidation. The relator obtained an alternative mandamus from this court, commanding General Ewen to rescind and revoke this order, or make known to the court why he should not do the same. In his return to this writ, the respondent, among other things, sets up that the order in question was issued pursuant, and in obedience to the orders of the Commander-in-Chief, dated March 16th, 1859. It is contended on behalf of the relator, that this order destroys or impairs his legal and constitutional rights, and that no authority exists, legally capable of enforcing it.

This court has, undoubtedly, the power of redressing or remedying any usurpation or abuse of authority, committed by any individual or association of individuals, within the state. This power extends to all and over all; and certainly the military organization of the state is not exempt from it. To place that branch of the public service beyond the control and supervision of the tribunal, possessing supreme original civil jurisdiction,

The People agt. Ewen.

would be jeopardizing the civil rights of the citizens, and may, in the course of time, terminate in the ascendancy of the military power and the subversion of constitutional government.

But, while it possesses, beyond all controversy, this search-ing and extensive jurisdiction over all branches of the public service, and every department of the government, this court has no power to interfere with the legitimate exercise of au-thority, and will refrain from employing the power which it does possess, particularly by mandamus, in doubtful cases, or on inexpedient occasions.

I. The relator disputes the legal right of the Commander-in-Chief to consolidate companies and regiments.

It may be plausibly contended that this is a right inherent in his command. Without it, could any military force be rendered efficient, particularly in a period of disturbance, riot, or insurrection? How could he, or the officers subordinate to him, form those combinations, or effect those maneuvers, or carry out those strategetical operations, which many emergen-cies may require, without having the power to form into one, bodies of men who, if separated, would be at the mercy of a hostile force—would be incapable of resisting attack or accom-plishing the offensive measures which the person in command may deem desirable? If, then, at the period of actual service such an authority is necessary, why should it not be necessary at a period of public tranquillity? It is a common observation that the best way to avoid war is to be properly prepared for it. And is it not the best way to avoid internal disturbance to have the military force so prepared in discipline and organ-ization, and in suitable combinations, as that it shall be able to act with the greatest possible efficiency and dispatch?

But, the relator insists that this power of consolidating com-panies and regiments does not exist in the Commander-in-Chief, because, although once expressly given to him by stat-ute (1 *R. S.* 294, § 2, 1*st ed.*), in the act of 1854 (*Laws of* 1854, *p.* 1,015), reconstructing the militia, this power is designedly omitted. Undoubtedly in the corresponding title and article of the new act (*Title* 4, *Article* 1), the section of the old act, ex-

pressly conferring the power, is left out; but does this amount to a repeal? We know that nothing can be repealed by implication: and all that this new act states in regard to a repeal of the old is, that " all laws and parts of laws inconsistent with it are repealed." There is nothing, however, in the section to which I have referred in the old act, inconsistent with the new.

But, the truth is, the new act expressly recognizes, though it does not formally adopt the section in the old act, conferring this power on the Commander-in-Chief. This escaped the attention of counsel on the argument; and I was not aware of it myself, until I afterward examined the provisions of the act of 1854. Section 24 of title 4, article 1, of that act, says, " all commissioned officers rendered supernumerary by the provisions of this act, and every officer rendered supernumerary by any consolidation or alteration of regiments, battalions, squads of troops or companies, shall be entitled to all the privileges conferred by any preceding law (except command), &c." This, then, settles the question whether the legislature have conferred this power on the Commander-in-Chief.

II. Is the practical application of this power such as to deprive the relator of any constitutional rights, by depriving him of any office or privileges contrary to sections 2 and 5 of the 11th article of the constitution ? Section 5 provides that " no commissioned officer shall be removed from office unless by the senate, on the recommendation of the governor, stating the grounds, &c., or by the decision of a court martial, pursuant to law." By the consolidation of the regiments in question, the relator is not deprived of office; for this, the section (24) of the new act, which I have quoted, expressly provides. To be sure, the relator will become a supernumerary Lieutenant-Colonel, but that only deprives him of present command; it does not deprive him of office ; and this is all that is prohibited by the constitution. The section to which I have referred, of the new act, secures to him the office of Lieutenant-Colonel, and all the privileges appertaining to it.

III. Neither is it the effect of the proposed consolidation to place the relator over officers, who had no voice in his election.

As we have seen, he is legally deprived of his command, and has, therefore, no officers to command. But, even if it did place him in command over officers who had no voice in his election, this would not be unconstitutional. Section 2 of article 11, indeed, provides that a field officer of regiments shall be elected by the commissioned officers of the respective regiments; but, it does not follow, if the exigencies or welfare of the service required it, that he is incapable of commanding any other officers, or any other regiment. Certainly, the constitution does not say so in express terms, nor does the language of the section necessarily imply it; and it may be greatly detrimental to the efficiency of the service to confine the authority of officers to those who have had a voice in electing them. The constitution merely prescribes the method of appointing militia officers. These remarks will apply with equal force to the objection, that the relator will be placed by the consolidation under the command of an officer, in regard to whose election he had no voice.

Having arrived at the conclusion that the Commander-in-Chief possesses the power of consolidating these regiments, and that the exercise of it neither destroys nor impairs the constitutional rights of the relator, it is not necessary to consider the other points presented on the argument. Being convinced of the power, and that its exercise produces no breach of the constitution, it is not for this court to inquire whether the exercise of it on this occasion is expedient or desirable. Of this the Commander-in-Chief is the most suitable judge. If the new arrangement disappoints or offends the relator, consigning him to inactivity, or separating him from his worthy associates and companions in arms, I may regret while I cannot prevent it. I must give the Commander-in-Chief the credit to believe that, by issuing the order complained of, he was actuated by a sense of public duty, and by a well founded belief that the efficiency of the 4th Brigade of the 1st Division and the welfare of the service generally demanded the measure.

The application must be denied with costs.