STATE, EX REL. CHARLES A. GROVE ET AL. v. GERSHOM MOTT, MAJOR GENERAL, AND ELIHU H. ROPES, COLONEL.

1. The act for the organization of the National Guard, authorizes the division commander to disband a company for mutinous conduct.
2. Such action relates to the organization of the militia, and is cognizable only by the military authorities.
3. Alleged grievances growing out of such action may be laid before the commander-in-chief, by the officers or men of the company ordered to be disbanded.
4. An order of disbandment made by the division commander is not reviewable in the Supreme Court.
5. The section of the National Guard act, directing that officers of a disbanded company shall be placed on the retired list, is not in violation of the constitution of the state.

On *certiorari.*

Argued at February Term, 1884, before Justices REED and PARKER.

For the prosecutors, *J. Augustus Fay.*

*Contra, James N. Stratton.*

The opinion of the court was delivered by

PARKER, J. The writ in this case was directed to Gershom Mott, major general commanding the division of the National Guard, and Elihu H. Ropes, colonel of the Third Regiment, on relation of Captain Charles A. Grove and others, alleging themselves to be members of Company F, Third Regiment, National Guard of New Jersey, commanding them to make return, and send to this court, all proceedings had or taken by or before them, or either of them, in reference to the disbanding of said company.

By the return made to the writ, it appears that on the 29th day of August, 1883, Elihu H. Ropes, colonel commanding the Third Regiment, sent to Major General Mott, through the regular military channel, a communication reporting that Company F of said regiment had recently, on more than one occasion, shown a mutinous spirit, and was in a demoralized condition, a majority of its members having openly declared that they would not parade if the first lieutenant was to have command, and that the captain (who was sick) felt obliged to issue a printed circular, appealing to the men to obey orders, out of respect for himself and the colonel. The communication of Colonel Ropes to the major general concluded with a request that the said company might be disbanded.

On the 25th day of September, 1883, the following order was issued from division headquarters, by Major General Mott, to wit: "Special order No. 9. It having been officially reported to these headquarters that company F, Third Regiment, has become inefficient, and been guilty of mutinous

conduct, the same is hereby disbanded, and the officers placed on the retired list. The quartermaster general will immediately take possession of the state property."

This is the order of which Captain Grove and the other relators, who were members of said company, complain, and which they ask this court to set aside.

The major general justifies his action under the *sixth* and *twelfth* sections of the act for the organization of the National Guard, found in *Rev.*, *p.* 679. The *sixth* section provides that whenever any company, battalion or regiment shall be guilty of mutinous conduct, the same may be disbanded, or consolidated with other corps, by the division commander. By the *twelfth* section it is provided that if the corps to which officers belong be disbanded, the officers shall be placed on the retired list.

The complaint is, that the officers and men of the company affected by the order of the major general, had no opportunity to be heard upon the charge of mutinous conduct, that no notice was given them of such charge; and they say that if a hearing had been given them, either by the colonel before he reported, or by the division commander before he issued the order of disbandment, it would have appeared that there had not been any mutinous conduct on the part of the company.

Depositions under the rule were taken, but it will not be necessary to consider the voluminous testimony adduced, unless the preliminary question of jurisdiction be decided in favor of the prosecutors of the writ. Unless this court has jurisdiction, it is manifestly improper to express an opinion upon the mooted questions of fact raised by the evidence.

It is admitted that no application has been made to the commander-in-chief, by or on behalf of the officers or men, or any of them, for a review of the proceedings, in order to set aside or modify the action of the major general.

The defendants claim that this is not a case for the interposition of the civil courts. They contend that it is a matter to be settled under the military law, by the military authorities; and that if any wrong has been done to the men

composing the company, or to the officers thereof, by the order of the major general, such wrong should have been redressed, and the order rescinded, by exhausting their military remedy.

There is military law in this state, consisting of statutes and usage sanctioned by time. Beyond its legitimate sphere, it must give way to the jurisdiction of the civil courts, but within its proper sphere it must control. The constitutional provision declaring the military to be in subordination to the civil power, does not take from the military authorities matters relating to the organization of the militia, which are of a strictly military nature.

By military law is not meant martial law. By some text-writers, and not a few judges, these terms have been used interchangeably. Hence some confusion exists as to the true signification of the term "military law."

Martial law presupposes the existence of a state of actual war, and the occupation of the district where it exists by a hostile force, interrupting the civil courts in the administration of law in their accustomed mode. Military law does not do this. It is part of our body of law, fully recognized by the civil courts, and is in force in time of peace as well. It is that law which relates to the organization, government and discipline of the military forces of a state. It is a rule super-added to the civil law, for regulating the citizen in his character of soldier, and is binding on those to whom it is intended to apply. The military authorities have cognizance and entire control over the *organization* of the militia within the law enacted on that subject.

The material question is, whether the disbanding of a company of the National Guard, and placing its officers on the retired list, is a matter relating only to organizations, and consequently of a merely military nature. If so, the civil courts have not jurisdiction.

By the constitution of the United States, the authority to train its militia, as well as to appoint the officers, was reserved to the states respectively. The constitution of New Jersey

directs that the legislature shall, by law, provide for enrolling, organizing and arming the militia of the state. The legislature has passed an act for the organization of that part of the militia called the National Guard, by which the power to disband or consolidate companies is given to the division commander.

From an early period of the existence of the state government, the Supreme Court has, undoubtedly, taken cognizance of some cases arising under military law, but upon examination it will be found that those cases did not relate to the organization of the military forces, but to some alleged illegal enforcement of fines or penalties, involving the personal rights of individuals, by way of pecuniary loss. Numerous cases in this and other states show that, in matters affecting organization, the civil courts have declined to interfere with the military tribunals, and have conceded that alleged errors or unjust procedure on that subject must be settled by the military authorities.

To prove that the construction here given is sustained by reported decisions, reference will now be made to cases.

The first case reported in New Jersey is that of *State* v. *Chambers, Coxe* 400. It involved the alleged illegality of an assessment on property of the prosecutor. It was alleged that the proceedings of Captain Chambers were erroneous in his mode of conducting the classing and assessment, under the military law then existing. Leak, the counsel of defendant, contended that a *certiorari* would not lie to the captain, who acted in a military capacity, but the court sustained the writ, evidently on the ground that an assessment had been made, which involved the property of the prosecutor.

In the case of *State* v. *Davis,* 1 *South.* 311, the writ was sustained, because a court composed of military officers, whose decisions, by statute, took effect upon the persons and property of individuals, had proceeded against the prosecutor of the writ by way of fine, to compel obedience to an order connected with a draft. In the opinion in that case, the

court, referring to the military law, which it erroneously styled martial law, said : " In the execution of this law, there are courts of various grades, and from the inferior, there is a revision by the superior, and ultimately by the commander-in-chief ; and so long as they keep themselves within their jurisdiction, the civil courts cannot interfere." The opinion then adds : " When the law imposes a penalty, or sets a fine, it must be adjudged in the known and established courts of law having cognizance thereof, according to the usual course of such courts."

In *State* v. *Kirby*, 2 *South.* 835, a *certiorari* was allowed at bar, to bring up tax warrants againt delinquents in military service, who had been fined, and to collect which distress warrants had been issued.

The case in 4 *Halst.* 337 (*State* v. *Atkinson*) was also where delinquents had been fined, and executions issued.

It will be seen that in all the cases to which reference has been made, fines or penalties had been inflicted, involving the property of individuals. There is not a case where a matter involving organization, merely, of the militia, has been entertained by the Supreme Court of this state.

There are some reported cases in the courts of other states, which shed light on this subject.

In 4 *Pick.* 25, it is stated that one Joseph Adams had belonged to a military company in the town of Heath. The company had manifested a determined opposition to the requirements of the military law, was reduced to a state of disorganization, and was insubordinate. The proper military authority had disbanded the company, and annexed its military territory to the adjoining towns. This was done under the statute of Massachusetts giving power to arrange and organize the militia of that state into divisions, brigades, battalions and companies. The court held that admitting the proceedings to disband the company to have been irregular, still a *certiorari* would not lie, and remarked that to restore the company to its former footing, the application should be

made to the executive, as commander-in-chief of the military forces of the state.

*Proctor et al.* v. *Stone et al.*, 1 *Allen* 193, was an action of tort, brought against the adjutant general of the state, for entering the armory of a company of militia that had been disbanded by the proper military authority, and removing the arms and equipments belonging to the state. The statute of Massachusetts was similar to that of New Jersey in this regard, except that the original power to disband a company in that state was given to the governor with consent of his council, instead of vesting the power in the first instance in the division commander, as is the case under our law. In that case, the court held that the legal and constitutional power to disband the company was with the military authorities, whenever, in their judgment, there was sufficient cause to exercise that power. To the report of the case cited from 1 *Allen* is appended a note, giving the opinion of all the judges of the·Superior Judicial Court of the State of Massachusetts, in the year 1837, in answer to the request of Governor Edward Everett, for a construction of the statute purporting to give power to disband corps of the militia. This opinion sustains the decision in 1 *Allen*, and declares that the power is with the military tribunals, to which it is entrusted by the statute.

In 25 *Barb.* 216, the case of *People, ex rel. Lockwood*, v. *Scrugham*, is reported. There had been a general order, assigning Lockwood to the command of the Seventh Brigade, which order had been revoked, and the command of the brigade assigned to Scrugham. On application for *mandamus*, the court held that it had no right to review the general order assigning Scrugham to the command, because the commander-in-chief of the military forces of the state, to whom the relator and every other officer in the militia owe obedience, was the ultimate judge, and that the Supreme Court had no jurisdiction of the matter. The court further held that Lockwood's commission was not revoked by the order complained of, that he was still a general of militia, but without present command.

A case reported in 10 *Maine* 145 (*Gould* v. *Hutchins*), at first view, might be thought antagonistic to those before cited, but upon examination it will be found to sustain them. An action had been brought to recover a penalty for neglect of duty in a military company. The alleged delinquent had belonged to another company, which had been disbanded and annexed to the company in which the delinquency occurred. The court took cognizance of the case only because the penalty attached was about to be enforced. This case is not, therefore, inconsistent with the general doctrine hereinbefore stated.

In Connecticut, it was held that the question to which company a soldier belongs, and ought to do duty in, is entirely a matter of military cognizance, and determinable by the officers of the militia. *Loomis* v. *Simons*, 2 *Root* 454.

In a case in 17 *How. Pr.* 375 (*People* v. *Ewen*), it was held that the governor of the state, as commander-in-chief, had power to consolidate companies, and that the Supreme Court could not lawfully interfere with such power. The opinion in that case shows that the court fully considered the practical application and effect of an order disbanding or consolidating corps, and it holds that such action does not deprive an officer belonging to a disbanded company of his commission, nor take from him any privilege contrary to the constitution. The court said that he might be legally deprived of his command, but not of his office, and although he became supernumerary, and had no present command, the order was not prohibited by the constitution. Deprivation of office is all that is prohibited, and no breach of the constitution being found, the court would not inquire whether the action of the military authorities was expedient.

From these and other decisions to the same effect, the line of demarkation between the jurisdiction of the civil and military tribunals is fixed; by determining whether the question involved relates to the organization and discipline of the corps composing the military forces of the state, or whether any civil disability, fine or penalty attaches. In the latter case, the Supreme Court will entertain a writ of *certiorari*, but in

the former, only the military authorities can act, and if the action of the inferior military tribunals be not satisfactory, recourse can be had only to the commander-in-chief.

In the case now before this court, the rights of no one have been encroached upon. Neither officers nor men have incurred any civil disability. The officers have not been cashiered, nor the men dismissed the service. No fine nor penalty has been imposed.

A company in one of the regiments of the National Guard has been disbanded, and the officers put on the retired list, and that is all. No disqualification attaches to the relators, by reason of the order of the major general. The men are not debarred from joining other companies in the organization. The officers placed on the retired list still hold their commissions, and may be assigned to military duty by their superior officers. They are still carried on the register, hold the rank upon which they are retired, and are entitled to wear the uniform of such rank. In fact, none of their personal rights or property interests have been invaded. The only result of the action of the major general is, that in supervising and perfecting the organization of the National Guard, he, as division commander, to whom the power is given by our statute, disbanded a company of one of the regiments, and left its officers without active command. If the officers and men of the company ordered to be disbanded considered themselves aggrieved by the order, they had the undoubted right to lay their grievances before the commander-in-chief for investigation. He would doubtless have given them a patient hearing through testimony taken in his presence, or by directing a court of inquiry to ascertain and report the facts. That was the legal course to be pursued by the relators.

The order complained of relates only to organizations, and is not reviewable by the Supreme Court. Should this court assume jurisdiction, and interfere with the discretion of the military authorities in disbanding or consolidating corps of the militia, it would palsy an important arm of executive

Orcutt v. Reingardt.

power, created and sustained by the legislative branch, for the preservation of order, and necessary, as events have proved, for the protection and preservation of civil government. The only safety is for each department to act within its legitimate sphere. There is no place on the bench for a military commander, nor is there room on the same saddle for the court and a major general.

The argument that the section of the act under which Major General Mott placed the officers of the disbanded company on the retired list, is in conflict with the constitution of the state, is fallacious. It is contended that it violates article VII., section 1, paragraph 6, which forbids the removal from office of commissioned officers of the militia, except through sentence of a court martial. The answer is, that the officers of the disbanded company have not been removed from office. The framers of the National Guard act knew the difference between taking away an officer's commission and placing him on the retired list. By placing Captain Grove and the other officers of the company on the retired list, the division commander kept within constitutional requirement, and did not only what the constitution permitted and the law authorized, but pursued a course sanctioned by long military usage.

This court not having jurisdiction over the subject matter brought here by the writ, it is dismissed, but without costs.