PEOPLE ex rel. SMITH v. ROE, Major General.

(Supreme Court, Appellate Division, First Department. May 11, 1900.)

1. MILITIA OFFICER—RESTORATION TO COMMAND—MANDAMUS.

Mandamus will not lie to compel the commanding officer of the state militia, who relieved an officer of his command with the approval of the governor, to reinstate the officer, since he is deprived of no right cognizable in a civil tribunal.

2. SAME.

Where an order by a commanding officer of the National Guard, relieving an officer of a regiment from his command, is approved by the governor, and his application for a reinstatement is denied by the governor,

the commanding officer had no authority, without the sanction and approval of the governor, to restore the relieved officer to his command.

Appeal from special term, New York county.

Application for mandamus, on relation of Clinton H. Smith, against Charles F. Roe. From an order denying the writ, relator appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

Alexander S. Bacon, for appellant.

William W. Ladd, Jr., for respondent.

McLAUGHLIN, J. At the request of the relator, as major of the 71st regiment of the National Guard of the state of New York, a court of inquiry was appointed to investigate certain charges made against him as to his conduct as an officer of such regiment at Santiago during the recent war with Spain, and on December 10, 1898, pending its decision, the respondent major general, as commanding officer of the National Guard of the state of New York, issued a special order, which was subsequently approved by the governor of the state as commander in chief of the National Guard, that the relator "be relieved from duty with the regiment until further orders." The court of inquiry, in its decision, recommended that the relator be ordered before a court-martial, if such court had jurisdiction to try an offense committed while in the service of the United States, outside of the state of New York, and, "if it be decided that such court-martial has no jurisdiction, we recommend that Colonel Smith * * * be ordered before an examining board to determine" his "capacity and fitness for the service." This report was approved by both the major general commanding and also by the commander in chief of the National Guard. Subsequently a board of examination was constituted, and directed to meet at a time and place stated for the purpose of determining the relator's capacity and fitness for service in the National Guard as a commissioned officer. The relator thereupon obtained an alternative writ of prohibition, directed to the commander in chief and the board of examination, to show cause before a special term of this court (59 N. Y. Supp. 959) why they should not be restrained from proceeding in the premises, and staying all proceedings in reference thereto until the determination of the application. At the time the writ was returnable, an order was made denying the application, and the relator appealed to this court (60 N. Y. Supp. 1088), and, the order appealed from being affirmed, he thereupon appealed to the court of appeals, in which court his appeal is now pending. On May 19, 1899, after the relator had been ordered before the examining board to determine his capacity and fitness for the service, he applied, in writing, to the respondent, to be restored to his command. His application was denied, the respondent indorsing upon it: "As the proceedings of the court of inquiry have been acted upon, and the governor has ordered this officer before a board of examination, I do not consider that I have any authority in this

matter." The application, thus indorsed, was forwarded to the governor, who, approving of the action of the respondent, wrote upon the relator's application, "Disapproved by command of the governor." Subsequently, the relator made an application direct to the governor, as commander in chief of the National Guard, to be restored to his former position; but his application was denied, the governor saying: "Most emphatically it does not seem to me on any ground whatever fit or proper that you should command your regiment until a decision in your case has been reached." The relator thereupon applied to the special term of this court for a peremptory writ of mandamus to compel the respondent to restore him to his former position, which application was denied, and he has appealed.

After a careful consideration of the record before us, we are of the opinion that the relator's application was properly denied. The order relieving him from command of his regiment being approved and his subsequent application for reinstatement being denied by the governor, the commander in chief of the National Guard of the state, we are of the opinion that the respondent did not thereafter have the power, without the sanction and approval of the governor, to restore him to his command. The order relieving the relator from his command, and especially after the relator had applied to the governor to be restored, and such application had been denied, became and was, in legal effect, the order of a superior officer, the commander in chief of the National Guard of the state, and as such it could not be disregarded, overruled, or set aside by an inferior officer. We are also of the opinion that, it being an order relating peculiarly to the management and control of the military forces of the state, the civil courts have no power to interfere with it. The governor of the state, under the constitution, is made the commander in chief of the military and naval forces of the state, and his authority in this respect is substantially the same as that vested in the president under the federal constitution over the army and navy of the United States. The president of the United States has the power, by virtue of his position, to issue such orders and directions as are necessary and proper to insure order and discipline in the army. 1 Winthrop, Mil. Law, 20; U. S. v. Williamson, 23 Wall. 411, 23 L. Ed. 89. See, also, Johnstone v. Sutton, 1 Term R. 544. He can relieve an officer from command, and appoint another in his place, and direct generally as to the movements of the army and navy; and the congress has no power to control him in this respect. 2 Tucker, Const. 718; Black, Const. Law, 100–102; Cooley, Const. Law, 99. The governor having substantially the same power over the troops of the state that the president has over the troops of the United States, he can do whatever, in his judgment, may be for the best interest of the state, either as to the movement of troops or the relieving from or assigning to duty officers in command of them; and, once he has exercised his authority in this respect, the civil courts have no right to interfere. Under the constitution and statutes the courts have no jurisdiction over, and therefore cannot interfere with, the management of the military forces of the state.

This has been the view entertained heretofore when similar questions have been presented. Thus, in People v. Ewen, 17 How. Prac. 375, it was held that the governor of the state had power to consolidate militia companies, and that the court could not lawfully interfere with the exercise of that power. The court in that case considered the application and effect of an order disbanding or consolidating companies, and held that such action did not deprive an officer belonging to a disbanded company of his commission, nor did it take from him any privileges guarantied to him under the constitution; that, while it might be said that he was legally deprived of his command, he nevertheless was not deprived of his office because he was made a supernumerary. And in People v. Scrugham, 25 Barb. 216, the court, again referring to this power, said there had been a general order assigning one Lockwood to the command of the 7th brigade, which order had been revoked, and the command of the brigade assigned to Scrugham. On application for mandamus the court held that it had no right to review the general order assigning Scrugham to the command, because the commander in chief of the military forces of the state, to whom the relator and every other officer in the militia owed obedience, was the ultimate judge, and the supreme court had no jurisdiction in the matter. The court further held that Lockwood's commission was not revoked by the order complained of; that he was still a general of the militia, but without present command. In the recent case of People v. Hill, 126 N. Y. 502, 27 N. E. 791, where commissioned officers had been relieved from their command by an order of the commander in chief, Judge Andrews, in delivering the opinion of the court, said:

"It is the order of the commander in chief of the military forces of the state. It is revocable by the authority which issued it. The relators have no such interest as entitles them to the interposition of the civil court. The order deprives them of no property, subjects them to no penalty, and affects no personal right cognizable in a civil tribunal. The officer who complains is still an officer as before, and the fact that his command is taken away is the result of a military order of a superior, and he must seek his redress in an appeal to him. Deprivation of command is not a civil injury."

See, also, Grove v. Mott, 46 N. J. Law, 328; State v. Harrison, 34 Minn. 526, 26 N. W. 729; Swaim v. U. S., 165 U. S. 553, 17 Sup. Ct. 448, 41 L. Ed. 823.

Here the relator, while he has been temporarily relieved from the duties devolving upon a commanding officer, has not been deprived of his office. He is still an officer of the 71st regiment. His office has not been taken from him; neither has he been injured in a pecuniary way. His rights have not been impaired or interfered with in such a way as to call for interference on the part of the court.

The order appealed from is right, and must be affirmed, with costs. All concur.