THE PEOPLE OF THE STATE OF NEW YORK ex rel. RANSOM H. GILLETT, Plaintiff-Respondent, *v.* WALTER A. DELAMATER, Defendant-Appellant.*

Third Department, April 29, 1936.

---

* Revg. 157 Misc. 711.

*Arthur V. McDermott, State Judge Advocate, New York National Guard,* for the appellant.

*John J. Bennett, Jr., Attorney-General [Ransom H. Gillett, Special Assistant Attorney-General,* of counsel], for the respondent.

HEFFERNAN, J. This is an action in quo warranto to test title to the office of brigadier-general in the State National Guard.

In his complaint respondent alleges that he is one of seven brigadier-generals in the military service of the State in active service and that appellant has usurped, intruded into and unlawfully holds the office of brigadier-general. In his prayer for relief respondent seeks an adjudication that he is the lawful holder of such office and that appellant has no title thereto.

The answer admits that respondent duly holds the office in question but denies that appellant has usurped the same. As a separate defense appellant alleges that he was duly appointed to the office of brigadier-general by the Governor of the State and was thereafter extended Federal recognition by the Secretary of War pursuant to the provisions of the National Defense Act. For a second defense the answer alleges that the Federal recognition previously extended to respondent was terminated and withdrawn prior to appellant's appointment.

Respondent applied to the court at Special Term for an order striking from the answer all the allegations of the separate defense relative to Federal recognition and also the second defense in its entirety on the ground that such defenses are insufficient, sham and frivolous. The court below granted the application and its order is the subject of this review.

There are no disputed questions of fact. On July 6, 1926, respondent was duly appointed and commissioned by the Governor, pursuant to the provisions of the Military Law, a brigadier-general

of the National Guard of the State. He has been a member of the National Guard for many years and has a distinguished military record. During the World war he served overseas as a major. He was wounded in battle and in 1928 was placed on the emergency officers' retired list of the army and since has received the retired pay as a major. Coincident with respondent's appointment Federal recognition was accorded him by the United States War Department pursuant to the provisions of the statute known as the National Defense Act.

" Federal recognition " is defined in National Guard Regulations, promulgated by the President under the authority of the National Defense Act, as follows: " Federal recognition is the action of the Federal Government in acknowledging and recording that personnel and organizations of the militia of a State are qualified as components of the National Guard thereof, under Federal laws and regulations." (National Guard Regulations, No. 2, par. 15b.)

The Federal Constitution (Art. 1, § 8) confers upon Congress the power: " To provide for organizing, arming, and disciplining the Militia, and for governing such part of them as may be employed in the service of the United States, reserving to the States, respectively, the appointment of the officers and the authority of training the Militia according to the discipline prescribed by Congress."

One of the provisions of the Army Appropriation Act of March 4, 1933 (47 U. S. Stat. at Large, 1589, chap. 281), in substance, is that: " No part of the appropriations made in this Act shall be available for pay, allowances, or traveling or other expenses of any officer or enlisted man of the National Guard who may be drawing a pension, disability allowance, disability compensation, or retired pay from the government of the United States."

This provision does not apply to an adjutant-general or to an officer or an enlisted man who may surrender his retired pay. Respondent declined to surrender his Federal pay as a retired officer and also declined to resign from the National Guard.

On August 15, 1933, he was notified by the adjutant-general of the army that Federal recognition of him as an officer of the National Guard had been withdrawn as of June 30, 1933. Not only does respondent admit that his Federal recognition has been withdrawn but he also concedes that he thereafter unsuccessfully appealed to the Federal courts to compel its restoration. (*United States ex rel. Gillett* v. *Dern*, 74 F. [2d] 485.)

On July 5, 1935, the Governor relieved respondent from duty as commanding general of the Fifty-third infantry brigade of the

National Guard of the State. Since that time he has not been assigned to any other military duty. On the same day the Governor appointed and commissioned appellant a brigadier-general in the National Guard and assigned him to command the Fifty-third infantry brigade.

Although respondent devotes a considerable portion of his argument to the proposition that the termination of his Federal recognition did not affect his status as a member of the State military forces, manifestly the only issue in this case is the validity of appellant's appointment as brigadier-general. Respondent's title to an identical office is admitted by the pleadings. The validity of appellant's appointment depends solely upon the question as to whether the Governor had authority to make it.

The Constitution of this State (Art. IV, § 4) provides that the Governor shall be the commander-in-chief of the military and naval forces of the State. By section 6 of article XI of the same instrument it is provided that no commissioned officer shall be removed from office during the term for which he shall have been elected or appointed, unless by the Senate, on the recommendation of the Governor, stating the grounds on which such removal is recommended or by the sentence of a court martial, or upon the findings of an examining board organized pursuant to law, or for absence without leave for a period of six months or more.

The Military Law of the State was radically amended in 1917 after the adoption of the National Defense Act. Manifestly it is framed not merely to conform to the provisions of the act, but to insure compliance with those provisions.

Section 30 provides that the Governor shall have power to organize the National Guard in such manner as " To conform to any organization, system of drill or instruction now or hereafter prescribed by the laws of the United States for the organization of the National Guard *and for that purpose the number of the officers and non-commissioned officers of any grade in any organization, department or corps may be increased or diminished * * * to the extent necessary to secure such conformity.*"

Section 31 likewise provides that " the Governor is authorized to prescribe the organization of the National Guard to conform as far as practicable to that prescribed by the laws of the United States now or hereafter in force."

Section 71 provides that " no person shall be commissioned unless he shall possess the qualifications now or hereafter prescribed by the laws of the United States."

In view of these provisions of the Military Law, it logically follows that the Governor was authorized, in the exercise of his

discretion, to appoint an additional brigadier-general. The mere fact that the War Department of the United States withdrew its recognition theretofore accorded to respondent does not make it mandatory upon the part of the Governor to relieve him of his command. The withdrawal of Federal recognition involved no cancellation of respondent's commission as a brigadier-general in the New York National Guard, nor does it affect it. Respondent's commission from the Governor was not canceled and could not be canceled by any act of the War Department. Except when employed in the service of the United States, the whole government of the militia is within the province of the State, and this follows because of the precise limitations of the constitutional grant. The United States may organize, may arm, and may discipline, but all of this is in contemplation of, and preparation for, the time when the militia may be called into the national service. Until that event, the government of the militia is committed to the State. ( *United States ex rel. Gillett* v. *Dern, supra.*)

Judging from the opinion it is apparent that the court below assumed that the issue involved here is whether the loss of Federal recognition forfeited respondent's right to exercise the powers and duties of a brigadier-general in the National Guard of the State. The opinion states: " The defense sought to be stricken out raises the question of relator's qualifications to continue in active service under his commission as a National Guard officer because of withdrawal of Federal recognition." It seems to us that the learned Special Term is mistaken in its conclusions. There is no issue whatever as to respondent's status or eligibility for active duty in the military service of the State. There is no question as to the status of respondent or as to his title to office. The only issue is as to appellant's title. The Special Term based its decision solely upon the premise that the only issue is as to respondent's title to and qualification for office. On that issue appellant is entitled to show justification for the Governor's action, and hence the court was not justified in striking out the portions of the answer which it did. We are not concerned with respondent's status. It is not questioned that respondent legally holds title to the office of brigadier-general in the National Guard.

There is a more compelling reason, however, why the defense should not have been stricken out. The complaint in this case fails to state facts sufficient to constitute a cause of action and the court has no jurisdiction thereof. The law is well settled that a bad answer is good enough for a bad complaint and that the attack of a plaintiff upon an answer permits a scrutiny of the complaint, and, if the complaint be bad, then plaintiff's motion

should be denied. (*Baxter* v. *McDonnell*, 154 N. Y. 432; *New Amsterdam Casualty Co.* v. *Nat. U. F. Ins. Co.*, 236 App. Div. 494.)

Respondent has not been removed from office by the action of the Governor. He has merely been relieved from duty. The action of a Governor of the State in relieving an officer of the National Guard of his command does not constitute a removal of the officer from his office. The deprivation of an officer of command is not a removal from office. An officer so long as he retains his commission retains his office. (*People ex rel. Leo* v. *Hill*, 126 N. Y. 497; *People ex rel. Weeks* v. *Ewen*, 17 How. Pr. 375; *People ex rel. Smith* v. *Roe*, 51 App. Div. 494; *State ex rel. Higdon* v. *Jelks*, 138 Ala. 115; 35 So. 60; *State ex rel. Grove* v. *Mott*, 46 N. J. L. 328; 18 R. C. L. 1059.) The Governor as the commander-in-chief of the militia is made the supreme head of the military forces of the State. He can do whatever in his judgment may be for the best interests of the State, either as to the movement of troops, or the relieving from or assigning to duty of officers in command of them; and once he has exercised his authority in this respect the civil courts have no right to interfere. The Governor as the commander-in-chief of the militia has the right to consolidate and reorganize the departments, regiments and corps in the military service of the State. (*People ex rel. Lockwood* v. *Scrugham*, 25 Barb. 216.) Under the Constitution and statutes the courts have no jurisdiction over, and, therefore, cannot interfere with, the management of the military forces of the State. This has been the view entertained heretofore, when similar questions have been presented. Thus, in *People ex rel. Weeks* v. *Ewen* (*supra*) it was held that the Governor of the State had power to consolidate militia companies and that the court could not lawfully interfere with the exercise of that power. The court, in that case, considered the application and effect of an order disbanding or consolidating companies, and held that such action did not deprive an officer belonging to a disbanded company of his commission, nor did it take from him any privileges guaranteed to him under the Constitution; that while it might be said that he was legally deprived of his command, he nevertheless was not deprived of his office because he was made a supernumerary. And in *People ex rel. Lockwood* v. *Scrugham* (*supra*) the court, again referring to this power, said there had been a general order assigning one Lockwood to the command of the Seventh brigade, which order had been revoked and the command of the brigade assigned to Scrugham. On application for mandamus, the court held that it had no right to review the general order assigning Scrugham to the command, because the commander-in-chief of the military forces of the

State, to whom the relator and every other officer in the militia owed obedience, was the ultimate judge, and the Supreme Court had no jurisdiction in the matter. The court further held that Lockwood's commission was not revoked by the order complained of; and that he was still a general of the militia but without present command. In the case of *People ex rel. Leo* v. *Hill* (*supra*), where commissioned officers had been relieved from their command by an order of the commander-in-chief, Judge ANDREWS, in delivering the opinion of the court, said: " It is the order of the commander-in-chief of the military forces of the State. It is revocable by the authority which issued it. The relators have no such interest as entitles them to the interposition of the civil courts. The order deprives them of no property, subjects them to no penalty, and affects no personal right cognizable in a civil tribunal. The officer who complains is still an officer as before, and the fact that his command is taken away is the result of a military order of his superior, and he must seek his redress in an appeal to him. Deprivation of command is not a civil injury." The action of the Governor in relieving respondent from the duties of a brigadier-general is a matter relating only to organization and consequently of a merely military nature. For that reason the civil courts have no jurisdiction. The line of demarcation between the jurisdiction of the civil and military tribunals is fixed. When the question involved relates only to the organization and discipline of the corps composing the military forces of the State only the military authorities can act. The respondent's only remedy was the right to present his grievance to the Governor. While he has been temporarily relieved from the duties devolving upon a commanding officer he has not been deprived of his office. He is still a brigadier-general in the National Guard. His office has not been taken away from him; neither has he been injured in a pecuniary way. His rights have not been impaired or interfered with in such a way as to call for interference on the part of the court. Although placed on the retired list he still holds his commission and may be assigned to duty by his superior officers. None of his personal rights or property interests have been invaded. The act of the Governor of which he complains relates merely to organization and is not reviewable by the Supreme Court. The law commits the command of State troops to the Governor. Certainly the duties and powers of a commander-in-chief are not ministerial only. He is called upon to exercise judgment and discretion in the promotion of the efficiency of the military forces.

Although we are satisfied that the action cannot be maintained, we are nevertheless powerless to dismiss this complaint because

appellant has made no application for such relief. Our power is limited to a review of the motion made by respondent. (*Bernard* v. *Chase National Bank*, 233 App. Div. 384; *Jarecky* v. *O' Neil*, 243 id. 105; *Fosmire* v. *National Surety Co.*, 229 N. Y. 44; remittitur amended, Id. 564.)

The order appealed from should, therefore, be reversed and the motion denied, but, under the circumstances, without costs.

HILL, P. J., RHODES, McNAMEE and CRAPSER, JJ., concur.

Order reversed on the law, without costs, and motion denied, without costs.