# The State *ex rel.* Higdon *v.* Jelks, as Governor, etc.

## *Application for Mandamus.*

1. *Mandamus to Governor; question as to whether it lies.*— Whether the courts have any right or power to enforce, by *mandamus*, the Governor of the State to perform any act or duty imposed by law, *quaere?*

2. *Governor as Commander in Chief of State troops does not act in ministerial capacity.*—In passing upon the request of an officer to be reinstated to his command, the Governor as Commander in Chief of the State troops, does not act in a purely ministerial capacity, but his action involves the exercise of judgment and discretion, partaking of a judicial nature; and such acts cannot be controlled by *mandamus.*

3. *Same; has right to relieve officer of command.*—The Governor, as Commander in Chief of the State troops, may, for the good of the service of such troops, relieve an officer of his command; and by so doing he inflicts no civil injury upon such officer.

4. *Same; when right to reinstatement of command waived.*—When an officer of the Alabama National Guard who has been relieved of his command by the Governor, upon being reinstated, declines to accept the reinstatement except upon certain conditions, and requests the revocation of the order restoring him to command, he thereby waives his right to restoration of the command.

APPEAL from the City Court of Montgomery.

Heard before the Hon. A. D. SAYRE.

The appeal in this case is prosecuted from a judgment of the city court of Montgomery sustaining demurrers interposed to a petition filed in the name of the State of Alabama on the relation of Elijah L. Higdon against Wm. D. Jelks as Governor, etc., and quashing the rule *nisi* and dismissing the petition. The facts of the case are sufficiently stated in the opinion.

JESSIE F. STALLINGS, for *appellant.*—The Governor, as such and as commander in chief, has no power or authority, under the Constitution and laws of Alabama, to either remove or suspend an officer, at least, of the rank of Colonel,—of the Alabama National Guard indefinitely from command, without the aid of a board of inquiry, or Military Courtmartial. He may suspend or remove from duty temporarily such officer, under certain conditions, or for certain definite offenses. This is the extent of his authority.—The Constitution of Ala., page 34, Sec. 18; page 45, § 3, 4 and 6; Acts 1898-9, page 136; Acts 1900-01, page 2502; Code, § 81, 85, 86, Articles of War, § 15, 32, 64 and 69.

[The State *ex rel.* Higdon v. Jelks, as Governor, etc.,]

Mandamus is the proper remedy.—Acts of the Legislature of Ala. 98-9 sec.———, Articles of War, § 71; Articles of War, § 3, Articles of War, § 15, Articles of War, § 62 and 64; Articles of War, § 79.

Mandamus is the only adequate remedy. Whenever there is no other specific legal remedy for the enforcement of any specific legal right, mandamus will lie. In the case at bar, it is perfectly evident that an action at law,—if indeed it could be maintained at all,—would not afford adequate redress for the injury suffered in being deprived of his office and a refusal on the part of the executive to reinstate him, especially when no charges have been preferred or courtmartial convened for the violation of any military rule or regulation. In the performance of duties purely ministerial, as in this case, the Governor is amenable to that process equally with any other public officer.—*Marbury v. Madison*, 1 Cranch, 137; *Kendall v. U. S.*, 12 Peters, 614; *T. & R. R. Co. v. Moore*, 36 Ala. 373; *Ethridge v. Hall*, 7 Porter, 54; *Ex parte Pickett*, 24 Ala. 94; *Ex parte Jones*, 1 Ala. 15; *Ex parte Cole*, 28 Ala. 50.

POWELL & HAMILTON and HARMON, DENT & WEIL, *contra.*—At an early date in this State, in the case of *Tennessee & Coosa R. R. Company v. Moore*, 36 Ala. 371, it was decided that a *mandamus* lies against the Governor to compel the performance of a purely ministerial act. In *Chisholm v. McGehee*, 41 Ala. 197, the doctrine announced in 36 Ala. *supra*, was questioned and again in the *State ex rel. Plock v. Cobb*, 64 Ala. 127, Judge BRICKELL, writing the opinoin of the court, doubted the authority of *Railroad Company v. Moore*, but did not decide the question one way or the other. The great weight of authority in this country, and certainly the most cogent reason is to the effect that a Governor con not be subjected to a write of *mandamus* in any case. Perhaps, the leading late case upon the subject, and one which reviews the authorities and reasoning most fully is that of *People v. Morton*, 156 N. Y. 136, reported in 66 Am. State Rep., page 547. We can not do better than to call the attention of the Court to the opinion in that case as fully sustaining the doctrine

that a *mandamus* will not lie against a Governor.—See also *State v. Governor,* 1 Ducher. (N. J.), 331.

That the Governor, as Commander in Chief of the State troops, cannot be interfered with by the Courts, by means of a writ of *mandamus,* in the discipline and conduct of troops was expressly decided in 34 Minnesota, 537; and also *Grove v. Moot,* 46 N. J. L. 328; 17 Vroom 328. This latter case is a full and elaborate discussion of the question, and reaches the conclusion that there is not room enough in the saddle for a Judge and Brigadier General, nor any place on the bench for a Major General.

Unquestionably, in the exercise of the duties of the office of Commander in Chief of the State troops, particularly in regard to their discipline, the Commander in Chief exercises a discretion. This is especially true where the duties of the Commander in Chief are not prescribed by law, nor any limitation placed upon his authority. The Constitution of the State, section 131 of Article 5 makes the Governor Commander in Chief of the military forces of the State, and neither prescribes his duties, nor limits his authority, and the status simply follows the language of the Constitution, Code Sec. 2852, without fixing his duties or limiting his authority.

HARALSON, J.—This is an application for a writ of *mandamus* in behalf of the relator, E. L. Higdon, who is appellant, against W. D. Jelks, as Governor, to require the latter to reinstate the relator to the office of Colonel of the 3rd Regiment of the Alabama National Guard.

The facts disclosed show, that the relator was duly elected Colonel of said regiment, on the 20th March, 1901, and on the 8th of April, following, was duly commissioned as such colonel by the then Governor of the State, W. J. Samford.

On January 29th, 1902, by special order of the Governor, No. 8, all field and staff officers of the regiment were "relieved from present duty with such regiment," and the companies from A. to M., inclusive, composing said regiment, were instructed to report through their

commanders to the commander in chief (the Governor) through the office of the Adjutant General.

On May 29th, 1902, by special order of the Governor, numbered 25, said special order numbered 8 was annulled and all field and staff officers of said regiment were commanded to resume duty with the regiment, and the company commanders were instructed to report thereafter, through military channels. By this order, the relator was directed to assume command of said regiment.

On May 30th, the relator wrote to the Governor, complaining that he had been suspended without charges having been made to justify such action, and without an opportunity to meet his accusers. He stated: "Your Excellency now proposes to set aside that order, suspending me and my staff, without in any manner relieving me or them, from the suspicion of having been guilty of some conduct that justified such harsh action." He further stated: "I feel that I have been guilty of no sin of omission or commission in the discharge of my duties as Colonel of the Third Regiment, and that I should have the opportunity, in the manner provided by law, to defend myself of any charge or reproach, and be confronted with the charge and my accusers; or, that your Excellency should plainly and publicly do me the justice to state, that I have done or invited nothing worthy of your censure, one of the things I think any officer may ask of his superior, and I beg respectfully to state that until one of these things is done by your Excellency, as commander in chief, I do not desire to resume command of my regiment, and I, therefore, respectfully request that you will revoke and annul as much of special order No. 25, just received by me, as restores me to the command of my regiment."

On June 17th, 1902, by order of the Governor, the relator was again relieved of duty as commanding officer of said regiment, and company commanders were instructed to report to Lieutenant Colonel E. P. McConnell, who was ordered to assume command of said regiment.

On June 30, 1902, relator again wrote to the Governor, repeating in substance his former complaints at

the action of the latter in suspending him from his command, and,—to quote his language,—demanding "justice, or a court of inquiry to ascertain and find whether I have done anything to merit suspension from the exercise of my duties, obligations and rights as Colonel of the Third Infantry, Alabama National Guard." By the word "justice," as here employed, relator refers evidently, to his previous demand on the Governor, that he "should plainly and publicly do me (him) the justice to state that I have done or invited nothing worthy of censure," etc.

The Governor replied, on the 7th July following, stating: "I beg to say that you and other officers of the 3rd Regiment were relieved from further service in connection with that organization because of a painful lack of harmony, to speak mildly, which was known to the whole State and was most incompatible with any kind of efficiency of the regiment as such. I relieved you, the Lieutenant Colonel and the Majors, not because of any special charge against either of you, but in the interest of the public service. I relieved all of you on equal terms. The official order has not been construed, so far as I know or have heard, as a reflection upon the 'honor' or 'reputation' of any of the said officers, if I except the complaint that comes from you. It was not my purpose to express or imply a reflection upon the 'honor' or 'reputation' of any of the relieved officers. The conditions in the regiment were intolerable, and my action was taken in the interest of the military service of the State. The other officers resigned. You held your commission. I ordered an election to fill these vacancies, just as I heard that harmony was in sight, with a view pointedly and positively expressed of restoring you to your command. You were restored, and honorably restored,—I could not have dishonorably restored you,—and I was greatly surprised to hear that this action displeased you. You then asked for an annulment of the order restoring you. I did not annul the order, but relieved you again. You have no reasonable cause for complaint. I decline to convene a court of inquiry, because I know of nothing to inquire into. The reflec-

tion case [you make] upon your 'honor' and 'reputatin' is entirely fanciful."

On July 19th and 31st, again on Aug. 7th, and December 13th, 1902, relator demanded to be restored to his command, and the Governor declined to take up the 3rd Regiment matter "for the present," and giving no assurance when the matter would be taken up again, or that relator would be restored, the latter filed this petition.

The respondent moved that the rule *nisi* be quashed and discharged. He also filed a demurrer to the petition and assigned many grounds therefor, among them, in substance, (1) That the courts have no power or jurisdiction whatever in any case, by means of writ of *mandamus*, over the Governor of the State. (2) That if they have any such jurisdiction, it lies only in those cases where the act sought to be compelled, is purely and strictly ministerial in its nature and involves no exercise of judgment or discretion. (3) That the civil courts are without jurisdiction to interfere with the commander in chief in the discipline and conduct of the military forces under him; and (4) That the petitioner or relator was, prior to the filing of his petition, offered all the relief which he now seeks in and by his petition, and declined the same.

1. Long ago, this court, after much consideration, following the case of *Marberry v. Madison,* 1 Cranch, 137, and many other cases to the same effect, decreed that a *mandamus* lies against the Governor of the State, as well as any other public functionary, to compel the performance of a purely ministerial duty enjoined by statute.—*Tenn. & C. R. Co. v. Moore,* 36 Ala. 371. But in *Chisholm v. McGehee,* 41 Ala. 197, it was said by the court, though not directly in issue, that it was questionable whether, upon the best authority, the court had any right or power to enforce by *mandamus* any duty imposed by law upon the Governor of the State, and numerous authorities are cited to support that expression.

In the case of *The State v. Cobb,* 64 Ala. 127, the integrity of the decision in 36 Ala. *supra,* was again shaded. It was said by BRICKELL, C. J., that the question was one not free from difficulty, and was embarrassed

by conflict of authority, remarking that "the government of the State is divided into three distinct and independent departments, and the powers of each confided to a separate body of magistracy, and it is declared that 'no person or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others,' except in the instances expressly directed or permitted by the constitution;" but the court declined to express any opinion as to the soundness of the principle in *Moore's case,* and we will not now do so, or be understood as questioning the soundness of that case. For an able discussion of the question whether or not courts have the right by *mandamus* to compel the Governor in any case, we may refer to the following: *People v. Morton,* 156 N. Y. 136. s. c. 66 Am. St. Rep. 547; *Hawkins v. The Governor,* 1 Ark. 570, s. c. 33 Am. Dec. 346, in which an exhaustive note by Freeman may be found; Merrill on Mandamus, § 92; Moses on Mandamus, § 82; High on Ex. Rem. § 118; 6 Am. & Eng. Ency. Law, 1016.

2. According to the view we take of the case, we may forego a re-examination and discussion of this question, since, conceding the right in the courts to control the Governor in matters purely ministerial, we are of opinion, as was the learned judge below, that in refusing to grant the requests of petitioner, the Governor was not acting in a purely ministerial capacity, but in a matter involving the exercise of his judgment and discretion, as Commander in Chief of the State troops, in order to promote their efficiency in the service. We find nothing in the acts of the Legislature, nor in the Articles of War of the United States, that forbids the Commander in Chief to relieve an officer temporarily of the discharge of the duties of his office, whenever the good of the service may appear to him to require it. "Official action, the result of judgment or discretion is judicial action. The duty is ministerial, when the law, exacting its discharge, prescribes and defines the time, mode and occasion of its performance, with such certainty that nothing remains for judgment or discretion. Official action, the result of performing a certain and specific duty,

arising from fixed and designated facts, is a ministerial act." Ministerial acts in order to be controlled by courts, must be of such a nature, that they might as well have been imposed on some one else, than the officer named. "Judicial power is authority vested in some court, officer or person, to hear and determine when the rights of persons or property, or the propriety of doing an act, are the subject matter of adjudication."—*Grider v. Talley,* 77 Ala. 424; Mechem on Pub. Officers, § 657.

"When the power is clearly defined and enjoined, does not involve the exercise of discretion or judgment, and no alternative is left to the officer charged with its execution; when he must act without inquiry, and without evidence, and the mode of action is expressly declared, the power is purely ministerial. When, however, the power involves the exercise of judgment and discretion; when it is to be exercised only in an ascertained event and on the concurrence and existence of particular facts, and the officer charged with the execution of the power must determine whether the event has arisen, or the facts exist requiring its exercise, then the power is judicial, or in its nature judicial."—*Ex parte Thompson,* 52 Ala. 98.

3. Here the law committing the command of the State troops to the Governor, as Commander in Chief, in respect to their discipline, did not prescribe the time, terms and mode of its performance, with such certainty as that nothing remained to him for the exercise of judgment and discretion; but necessarily much was left to his discretion, without expressly declaring his mode of action. Under the constitution the Governor is made the Commander in Chief of the militia and volunteer forces of the State, and section 2853 of the Code, without more, constitutes the Governor, the Commander in Chief of the forces of the State, known as the Alabama National Guard. It is difficult to conceive that the functions and powers of a Commander in Chief are ministerial only. To deny him judgment and discretion in the promotion of the efficiency of the military forces, would reduce him to a poor and mortifying plight as commander of these forces; and, it has been expressly held elsewhere, under statutes substantially similar to

[The State *ex rel.* Higdon v. Jelks, as Governor, etc.]

ours, that it cannot be done.—*State of Minn. v. Harrison*, 34 Minn. 526; *Grove v. Mott*, 46 N. J. L. 328.

· 4. It is contended that the Governor had no power to remove the relator from the office of colonel of his regiment, to which he had been elected, but an all sufficient answer to this suggestion is, that he has not been removed from his office nor discharged therefrom within the meaning of section 1229 Rev. Statutes of U. S. He is still colonel, relieved, for the time, from duty, not so far as appears by way of punishment, but it may be for the good of the service only. Deprivation of command does not deprive one of office, and is not a civil injury.— *People v. Hill,* 126 N. Y. 506; 1 Winthrop Military Law, p. 607.

5. It is not to be overlooked, that going very far in his effort to relieve the mind of the relator of any supposed or fancied impression that he intended to reflect upon his honor or reputation, the Governor, in his letter to him, of date the 7th July, 1902,—to repeat some of the evidence detailed above,—stated to relator, that the reason he had for relieving him and the other officers of the regiment from further service, at the time, in connection with the regiment, was a painful lack of harmony among them incompatible with any kind of efficiency; that they had been relieved in the interest of the public service, and all of them on equal terms; that no reflection on the honor or reputation of any of them was intended; that just as soon as he heard that harmony was in sight, and with a view, pointedly and positively expressed, of restoring relator to the discharge of his duties as colonel, he issued an order to that effect. He also stated, that he declined to convene a court of inquiry, because he knew of nothing to inquire into. The Governor thus tendered to relator the relief he now asks the court to grant. That relief he refused to accept, unless coupled with an order for a court of inquiry, or a plain and public statement by the Governor that relator had done nothing worthy of censure.

Our conclusion is, that the relator's purpose cannot be subserved by this extraordinary remedy, and that the court below did not err in the decree rendered.

Affirmed.