[Civil No. 1793.   Filed April 28, 1920.]

[189 Pac. 430.]

STATE, on the Relation of WILEY E. JONES, Attorney General, Appellant, v. WALTER S. INGALLS, Appellee.

1. MILITIA—GOVERNOR HELD TO HAVE POWER TO APPOINT ADJUTANT-GENERAL.—The Governor has the power to appoint an adjutant-general for the state, under Civil Code of 1913, paragraph 50, providing that all officers not made elective by the Constitution of the state shall, unless otherwise provided by law, be appointed by the Governor, and in view of Constitution, article 5, section 8, authorizing the Governor to appoint officers to fill vacancies in absence of provision therefor by Constitution or law.

2. MILITIA—TERM OF ADJUTANT-GENERAL HELD LIMITED BY APPOINTIVE POWER.—The office of adjutant-general of the state is within Civil Code of 1913, paragraph 159, providing that every officer whose term is not fixed by law shall hold at the pleasure of the appointing power and is thus within the Governor's power of removal.

3. MILITIA—STATUTE CONTINUING NATIONAL GUARD OFFICERS HELD NOT TO APPLY TO TERM OF ADJUTANT-GENERAL.—Laws of 1917, chapter 74, giving the adjutant-general an indefinite tenure of office, and providing that commissioned officers of the National Guard and the adjutant-general now serving under commissions regularly issued shall continue in office without issuance of new commissions, not being intended as a tenure of office statute, has no application to state adjutant-general.

4. MILITIA—NATIONAL DEFENSE ACT AND KINDRED STATUTES HELD NOT TO APPLY TO ADJUTANT-GENERAL.—National Defense Act (U. S. Comp. Stats., §§ 3044m, 3044n, and 3044o), and Laws of 1917, chapter 74, §§ 5 and 6, relating to commissions, appointment, qualification and vacation of the commissions of officers, being confined to officers of the National Guard, have no application to the state adjutant-general; he not being recognized as a commis-

sioned officer of the National Guard; although Military Code of
Arizona paragraph 3899, provides that he shall be a commissioned
officer thereof.

APPEAL from a judgment of the Superior Court
of the County of Maricopa. R. C. Stanford, Judge.
Affirmed.

Mr. Wiley E. Jones, Attorney General, Mr. C. M.
Gandy, Mr. Louis B. Whitney, Mr. A. B. Baker, and
Mr. F. J. K. McBride, Assistant Attorneys Gen-
eral, Mr. Spencer B. Pugh and Mr. W. H. Dial, for
Appellant.

Mr. Will E. Ryan, for Appellee.

ROSS, J.—This is an action in the nature of *quo
warranto* instituted by the state on the relation of the
Attorney General, upon information from and at the
instance of one Charles W. Harris, and involves the
title to the office of adjutant-general of the state of
Arizona.

Briefly, the complaint alleges the appointment, on
August 17, 1912, of Harris to such office by Governor
George W. P. Hunt, "acting in that capacity"; his
acceptance and qualification by taking the official oath
and filing the official bond as required by law, and im-
mediate entrance upon and continuous discharge of
the duties of the office until about June 13, 1919, when
the defendant, Walter S. Ingalls, claiming the office
by appointment from the Governor of the state (the
personnel of that office having changed), usurped, in-
truded into and unlawfully exercised, and still usurps,
intrudes into and unlawfully exercises the franchise
of said office.

From a stack of allegations in the defendant's an-
swer, we have been able to winnow out this grain of
wheat: That on June 13, 1919, the office of adjutant-
general was or became vacant, and that on that day

the defendant was duly appointed thereto by the Governor, and that he is now, and ever since has been, exercising the franchise and performing the duties thereof, by virtue of said appointment.

The court found that on May 6, 1919, the Governor of the state served written notice upon Harris that his services as adjutant-general were no further desired, and that thereafter, on June 13, 1919, the Governor duly appointed and commissioned thereto, the defendant, Ingalls, and entered judgment dismissing the complaint.

The Attorney General took the position in the trial court, and takes it here, that the Governor of the state is not, by the law as it now stands, given the power to remove the incumbent, Harris, from, or to appoint Ingalls to, the office of adjutant-general. He bases his claim upon the terms of chapter 74, Laws of 1917, which we will hereafter consider. If he is correct, then the method and manner of selecting and appointing an adjutant-general of the state has been completely and radically changed, as also the tenure of the office.

According to the state Constitution, section 1, article 4, the present Military Code (chapter 85, Laws 1912, also found in Civil Code of 1913, tit. 33) went into effect ninety days after the adjournment of the legislature that passed it, or on August 16, 1912. Harris' appointment, being made on August 17, 1912, it was made under and by virtue of the latter act or the general law on the subject of appointment to office. While this Code recognizes the existence of the office of adjutant-general of the state, by placing upon him many duties, both civil and military, it nowhere provides how or by whom he shall be appointed, nor does it fix his tenure of office. The Military Code is silent in these regards. The Military Code of the territory of Arizona (chapter 1, tit. 46, Rev. Stats. 1901) empowered the commander-in-chief

to make the appointment of the adjutant-general, and provided that he should "continue to hold office until his successor has been appointed and qualified." But these provisions were not preserved in the present Code. They were left out and no equivalent expression employed in their stead. The question is, then, Upon what authority did the Governor of the state appoint and commission Harris? That question, we think, may be easily answered, but not by reference to the Military Code. Section 8, article 5, of the state Constitution provides:

"When any office shall, from any cause, become vacant, and no mode shall be provided by the Constitution or by law, for filling such vacancy, the Governor shall have the power to fill such vacancy by appointment."

In the absence of any statutory provision, the Governor might well refer to this section of the Constitution for authority to fill the vacancy in the office of adjutant-general. However, this provision of the Constitution is supplemented by legislation. Paragraph 50, title 1, Civil Code, provides that—

"All officers not made elective by the Constitution or laws of this state shall, until otherwise provided by law, be appointed by the Governor."

The office of adjutant-general falls within the terms of the last-quoted statute. The law being silent as to how and by whom he shall be appointed, power must be found to exist in the Governor under these general provisions of the Constitution and the statute, to make the appointment.

The law does not state nor fix the term or length of time the adjutant-general may exercise and enjoy the honors and emoluments of the office. If the statute named the days, months, or years that he might serve, a different question would arise than the one we have before us. The law creating and recognizing the office doubtless took into consideration the

close relation that this officer sustains to the Governor, and purposely omitted fixing any term so that the Governor might exercise the power, at his discretion, to make changes in that office.

It is provided in another portion of the statute law that—

"Every officer whose term is not fixed by law shall hold at the pleasure of the appointing power." Paragraph 159, Civ. Code.

See *Cole* v. *Territory,* 5 Ariz. 137, 48 Pac. 217; *State* v. *McKay,* 249 Mo. 249, Ann. Cas. 1914D, 97, 155 S. W. 396.

Thus we see there is ample constitutional and statutory authority for the Governor to not only remove the adjutant-general, but also to appoint a successor to fill the vacancy.

It is claimed, however, by the Attorney General that chapter 74, Laws of 1917, in terms provides that Harris, the adjutant-general at the time of its passage, was given an indefinite tenure of office, and that the Governor, thereby, was deprived of the power to remove him. Section 4 thereof reads as follows:

"Commissioned officers of the National Guard and the adjutant-general now serving under commissions regularly issued shall continue in office without the issuance of new commissions after taking the following oath, and all officers hereafter commissioned shall take and subscribe to the following oath. . . . "

We do not agree with the Attorney General's contention. Chapter 74 is not, and was not, intended as a tenure of office statute. A comparison of its terms with the National Defense Act of June 3, 1916, United States Compiled Statutes, shows that it was inspired by the latter act. Its section 2 corresponds with section 3044h, section 3 with section 3044i, section 4 with section 3044l, section 5 with sections 3044m and 3044n, and section 6 with section 3044o, of the National Defense Act (6 Fed. Stats. Ann., 2d ed., pp. 437–441).

Section 1 recognizes the paramount authority of the
Congress to provide for the organizing, arming and
disciplining the militia and the governing of such parts
thereof as may be called into the actual service of the
United States. Section 8, art. 1, Federal Constitu-
tion. Section 30441 (our section 4), recognizing that
the power to appoint and commission officers of the
National Guard is reserved to the states by section 8,
article 1, of the federal Constitution, provides that
such officers, by taking the oath therein set out,
"shall continue in office, as officers of the National
Guard, without the issuance of new commissions."
That is, the officers may be called into the federal ser-
vice by taking the oath of allegiance to the United
States and without being recommissioned. The pro-
visions of sections 3044m, 3044n and 3044o, National
Defense Act, and sections 5 and 6 of chapter 74 (6
Fed. Stats. Ann., 2d ed., pp. 440, 441), as to who may
be commissioned as officers, their appointment, quali-
fication and vacation of their commissions, have
reference to, and are confined to, officers of the Na-
tional Guard.

These provisions have no application whatever to
the adjutant-general of the state. The National De-
fense Act nowhere recognizes the adjutant-general as
a commissioned officer of the National Guard. Under
the Military Code of Arizona, paragraph 3899, it is
provided that the adjutant-general shall be a com-
missioned officer of the National Guard of the active
or retired list; but, of course, his commission as such
is very different from his commission as adjutant-
general. His appointment, it is provided in para-
graph 3900, "shall not vacate such officer's commis-
sion in the National Guard unless said officer requests
that his former commission be declared vacant." By
virtue of his office, he is made "senior in rank to all
officers of the National Guard," and in times of peace
he is, under the direction of the Governor, *ex-officio*

chief of staff, chief quartermaster, chief of ordnance, chief of commissary, paymaster, and inspector-general of the state. The composition of the National Guard, as defined by the Arizona Military Code, paragraph 3897, or the National Defense Act, United States Compiled Statutes, section 3044 (6 Fed. Stats. Ann., 2d ed., p. 434), does not include the adjutant-general. The only reference to the adjutant-general in chapter 74, either directly or by implication, is the one in section 4, wherein it is provided that he "shall continue in office without the issuance of a new commission" after taking the oath prescribed therein. Giving this exotic and unassociated expression all the force to which it may be entitled, it does not fix a term to his office. It says he "shall continue in office," and this, we take it, means nothing more than that he shall hold the office subject to the pleasure of the appointing power. It does not put him in the class of commissioned officers of the National Guard whose commissions can only be vacated as provided in section 6 of chapter 74, or section 3044o of the National Defense Act (6 Fed. Stats. Ann., 2d ed., p. 441). It seems quite clear, under the law as it now is and has been since August 16, 1912, that the power to appoint the adjutant-general of the state is vested in the Governor; that the officer has no term, but holds his commission subject to the pleasure of the appointing power.

From the nature and duty of the office, and the intimate association of the officer with the commander-in-chief of the National Guard of the state, every reason and consideration would seem to emphasize the necessity of the Governor having the power at any time to choose for such office a person in whose ability and fidelity he could have implicit confidence; and, before he should be deprived of that power and right, a clear and explicit intention to do so should be made to appear. If the view contended for by the Attor-

ney General unfortunately were the law, administrations of the Governor's office of this state might come and go, but the adjutant-general would "go on forever," unless perhaps he should resign or absent himself without leave for three months, or be removed on the recommendation of an efficiency board or pursuant to a sentence of a court martial. This contention is not sound, and, of course, we cannot follow it.

The judgment of the lower court is affirmed.

CUNNINGHAM, C. J., and BAKER, J., concur.