No. 11,192.

THE PEOPLE, EX REL. BOATRIGHT *v.* NEWLON.

Decided June 15, 1925.

Action in quo warranto to try the title to the office of adjutant general. Judgment for defendant.

*Affirmed.*

1. MILITIA—*Officers—Constitutional Law.* Legislative regulation of the tenure of officers of the National Guard does not contravene section 5, article IV, of the Constitution, providing that the Governor shall be commander-in-chief of the military forces of the state.

2. *Regulations—Constitutional Law.* Section 56, c. 183, S. L. '21, concerning militia, does not conflict with section 17, article V, of the Constitution, because the state military regulations, instead of being specified in the act, are made to depend upon the federal army regulations.

3. CONSTITUTIONAL LAW—*Construction.* Particular provisions of the Constitution govern general.

4. MILITIA—*Adjutant General.* The legislature has plenary power, and there are no constitutional provisions which prohibit it fixing the qualifications and tenure of the adjutant general.

5. STATUTES—*Construction—Rules.* In construing statutes, general words should receive general construction; words of ordinary

use must be given their ordinary meaning, and where the language is plain, it must be given effect.

6. MILITIA—*Adjutant General—Office.* The adjutant general is an officer as that term is used in section 2, c. 183, S. L. '21, and under the provisions of the act holds office until he reaches the age of 64 years.

7. *Adjutant General—Term of Office—Public Policy.* Because the legislature for a long period of time has fixed the term of office of the adjutant general at two years does not establish a public policy which must be read into subsequent statutes relating to that subject.

8. CONSTITUTIONAL LAW—*Legislation.* Legislative powers constitutionally vested can only be constitutionally withdrawn.

9. MILITIA—*Adjutant General—Removal.* An executive order removing one from the position of "civil adjutant general" does not affect his status as "adjutant general."

*Error to the District Court of the City and County of Denver, Hon. Julian H. Moore, Judge.*

Mr. WILLIAM L. BOATRIGHT, Attorney General, Mr. S. E. NAUGLE, Assistant, Mr. CHARLES ROACH, Deputy, for plaintiff in error.

Mr. HENRY J. HERSEY, Mr. N. WALTER DIXON, Mr. THOMAS J. DIXON for defendant in error.

Mr. J. W. KELLEY, amicus curiae.

*En banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

DEFENDANT in error was the duly appointed, qualified and acting adjutant general of Colorado. The Governor assumed to remove him. Defendant declined to surrender the office and this action in quo warranto was brought to try title thereto. Judgment was for defendant and plaintiff brings error.

Newlon was appointed "colonel and adjutant general" by Governor Shoup December 28, 1922, and the order of appointment recited that it was made under the act of 1921. He was relieved "as civil adjutant general", and another directed to assume the duties of that position during the vacancy, by order of Governor Morley, dated January 13, 1925, the day said Governor took office. Newlon claims his tenure continues under the statute until he is sixty-four years of age.

The assignments of error, while sufficient, are so general as to give us no definite understanding of plaintiff's contentions, and his brief does not distinctly and separately state them. We gather from both, however, that they are: (1) Assuming that the adjutant general is included in the term "all officers", as used in the Act of 1921, then said Act is invalid because in violation of section 5, article IV, and section 17, article V, of the Constitution. (2) The words "all officers", as used in the act of 1921, do not include the adjutant general, whose tenure is therefore not fixed by the act, and whose term therefore expires with that of the Governor appointing him. (3) The public policy of the state, gathered from repeated legislative acts fixing the adjutant general's term at two years, should be invoked in interpreting the act of 1921, and so invoked demonstrates that plaintiff's contention No. 2 is correct.

"The governor shall be commander-in-chief of the military forces of the state, * * *." Sec. 5 art. IV, Colorado Constitution.

"The organization, equipment and discipline of the militia shall conform as nearly as practicable, to the regulations for the government of the armies of the United States." Sec. 2, art. XVII, Colorado Constitution.

"The governor shall appoint all general, field and staff officers and commission them. Each company shall elect its own officers, who shall be commissioned by the governor; * * *." Sec. 3, art. XVII, Colorado Constitution.

"No law shall be passed except by bill, * * *." Sec. 17, art. V, Colorado Constitution.

The acts of 1879, 1889, 1897, 1909, and 1915, each fixed the term of the office of adjutant general at two years. The first four refer to the position as "his office" and the last uses the language "whose term of office."

A part of the act of 1921 reads: "Section 1. That the Governor shall be Commander-in-Chief of the organized militia except when called into the service of the United States, and he shall appoint the Adjutant General who shall be Chief of Staff; *Provided,* That the Adjutant General shall have served as a field or line officer in the United States Army or National Guard and attained the rank of Major.

Section 2. The Adjutant General and all general, field and staff officers shall be appointed by the Governor. The Adjutant General and all officers shall be appointed as provided for in National Guard Regulations.

No staff officer, including officers of the Pay, Inspection, Subsistence and Medical Departments appointed since the 25th day of May, 1917, shall continue to serve as an officer of the National Guard of this State under his present commission unless he shall have had previous military experience previous to the date of said commission.

*All officers* hereafter appointed shall have had previous military experience and shall hold their *positions* until they shall have reached the age of sixty-four years, unless retired prior to that time by reason of resignation, disability, or for cause to be determined by a court martial or efficiency board, legally convened for that purpose, and that vacancies among said officers shall be filled by appointment from officers or members of the National Guard of the State of Colorado.

Section 4. The organized militia shall be designated the 'Colorado National Guard'. The Colorado National Guard shall consist of the Staff of the Commander-in-Chief, and such departments and staff corps and organiza-

tions as shall be prescribed by the War Department for the National Guard.   *   *   *.

Section 56. In case of conflict between any of the provisions of this Act and Army Regulations, War Department Orders or National Guard Regulations, now in force or hereafter promulgated by the War Department, such War Department Regulations and Orders or National Guard Regulations shall be paramount and the conflicting provisions hereof shall be of no force or effect." Chap. 183, p. 625, L. 1921.

In addition thereto the act makes it the duty of the adjutant general to receive and pass upon petitions for enlistment of required organizations, and appoint an enlisting officer to receive them into the service; furnish enlistment contracts; notify officers of their appointment; receive and file their oaths; countersign and seal their commissions; receive resignations and issue discharges with the approval of the Governor; employ the necessary office force for all military departments; act with four others, including the Governor, as the military board to prescribe all military regulations; receive the pay of an officer "of the United States Army of like grade"; "issue warrants for the arrest of offenders against whom charges have been preferred"; and do many other things, all relating to the military department.

1. It is difficult to understand how legislative regulation of the tenure of officers of the National Guard can contravene section 5, of article IV, of the Constitution. Certainly it does not interfere with the power and duty of the Governor to be commander-in-chief. As such he calls out, directs, and disbands the militia, all however under statutory and military regulations which he must obey but cannot create or abolish. He "commands" the guard which the law creates and commits to his care. That command is no more or less effective because of his inability to discharge an adjutant general than because of his inability to discharge a corporal. While in office all must obey orders and prove efficient. Otherwise they

may be temporarily suspended in an emergency and removed by charges and hearing, not as the whim of the commander-in-chief may dictate, but as the law and military regulations prescribe. Even the President of the United States may not, without such charges and hearing, remove the humblest officer in the federal armies. He is no less commander-in-chief by reason thereof nor is the Governor any less commander-in-chief of the National Guard for the same reason.

It is said that section 56, supra, and similar provisions of the act of 1921, conflict with section 17, article V, of the Constitution because the state military regulations, instead of being specified in a bill duly enacted, are made to depend upon the federal army regulations and are thus enacted by reference to variable rules beyond state control. But in no other way could the mandate of section 2, article XVII, be carried out by the legislature. That section of the Constitution is particular whereas said section 17, article V, is general, and the law is well settled that particular provisions govern general. The act of 1921 is constitutional.

The legislature has plenary power, and there are no constitutional prohibitions which prevent it fixing the qualifications and tenure of the adjutant general. The question then is, "Did the Act of 1921 fix such tenure?"

(2) Whether section 2, of the act of 1921 fixed the tenure of the adjutant general depends upon the intent of the legislature to be gathered, if possible, from the act itself. Said section is divided into three distinct paragraphs. The words to be construed are found at the beginning of the third paragraph and are: "All officers * * * shall hold their positions until they shall have reached the age of sixty-four years." Officers of what? The National Guard of course, because the act, by its title and body, deals with the National Guard only. The first rules to be applied are that general words should receive a general construction, (36 Cyc. 1118); that words of common use must be given their ordinary meaning

(36 Cyc. 1114) ; that where the language is plain it must be given effect (36 Cyc. 1107). The words above quoted are general, they are of common use, and the language is plain. Standing alone no doubt of their meaning would occur to a person of ordinary intelligence and education unless skilled in legal technicalities and diligently searching for a flaw.

But it is said the adjutant general is not an officer but a person designated to perform certain duties. All the statutes on the subject from the beginning refer to the position as an office, and the tenure of the incumbent as "term of office." Webster defines "adjutant" as "an officer," "adjutant general" as "the principal staff officer," and "staff" as "the aggregation of staff officers." One discharging the duties of chief of a staff of officers, and by reason thereof having a distinctive military title, tenure, and compensation, is quite likely an officer other than the officer he was when called to that chieftancy. But let us for a moment suppose the contrary. This defendant is most certainly a colonel discharging the duties of a position to which he has been duly assigned by proper authority, and that position is called "Adjutant General." If so he is unqualifiedly within the questioned provision of the Act. "All officers" (this Colonel) "shall hold their *positions* (the position of adjutant general) until they shall have reached the age of sixty-four years." This, be it noted, is the first time the word "position" occurs in the act.

The principal basis of the contention that "all officers" does not include the adjutant general is that if it did the phrase "the adjutant general and all general, field and staff officers", in the first paragraph of section 2, would have read "the adjutant general and all *other* general field and staff officers," and the phrase "the adjutant general and all officers," immediately following, would have read "the adjutant general and all *other* officers"; and that having previously mentioned the adjutant general apart from "all officers" he was thereby excluded when "all officers" were mentioned in the third paragraph of the sec-

tion. Such a construction would involve the holding that the legislative care as to qualifications (i. e. present membership in the Guard), tenure (i. e. until sixty-four years of age), and security (i. e. discharge only by court martial or efficiency board), exercised as to minor officers, was not exercised as to the chief; and that the federal regulations so scrupulously followed as to the tenure of other officers, and as to the adjutant general in other particulars, were, by implication and contrary to constitutional direction, departed from as to his tenure. All this confusion arises from ignoring the well known rule of the "last antecedent" which requires that if any reference to prior language is necessary to interpret "all officers" that reference will go to the preceding paragraph only and there the language is "staff officer." This would result in reading the disputed language "all staff officers shall hold their positions until they have reached the age of sixty-four years." 36 Cyc. 1123. *Cushing v. Worrick,* 9 Gray (Mass.) 382.

(3) Next an escape from the plain meaning of the act is sought by resort to a fancied rule of interpretation furnished by public policy. It is said that because from the beginning the legislature has fixed the term of the adjutant general at two years that term must be recognized as the public policy of the state and read into subsequent statutes. The fallacy of the argument lies in the assumption that repeated acts fixing the term at two years presuppose a legislative conviction of lack of power to fix any other term or a conviction that any other term would be detrimental to the public service. If the assumption were well founded, repeated and identical lgislative action would prove absence of legislative discretion, legislative powers unused would become atrophied, and succeeding assemblies, by following a beaten path, would be able to create an unwritten Constitution superior to our written one and impose bonds upon their successors more inflexible than the laws of the Medes and Persians. Legislative powers

constitutionally vested can only be constitutionally with-drawn. These repeated acts prove but one thing, i. e., that these successive assemblies believed they had con-stitutional authority to fix the term of the adjutant gen-eral as they deemed advisable. The rule of public policy which plaintiff invokes requires that as the statute differs in language and apparent meaning from its predecessors we must, in ascertaining its object that we may correctly interpret it, look for the defects in the former law and the remedy provided by the new one. 36 Cyc. 1110. It is perfectly apparent that the supposed defects were, polit-ical control of the military establishment, lack of har-mony between federal and state regulations, and insecurity of the tenure of military officers; and the remedies pro-vided were, the substitution of merit, efficiency and service for political control, the harmonizing of state and federal regulations, and security of tenure of military officers, all in conformity to the command of section 2, art. XVII, of our Constitution.

But the judgment is correct for another reason. Gover-nor Morley did not remove defendant from any office or position, or devolve upon another the duties of any such, which defendant held. The office or position mentioned in the Governor's order is "civil adjutant general" and there is no such office or position. If this were a mere misnomer the point would be purely technical. It clearly appears, however, that the order meant exactly what it said, and was based upon the theory that there was such an office or position as "civil adjutant general", separate and apart from the office or position of "adjutant gen-eral", and that it was the intention of the Governor to deal only with the former. The term "civil adjutant gen-eral" cannot be found in our Constitution or statute. It is derived solely from the National Guard regulations of the War Department (military bureau) of the United States, sections 145, 146 and 147. Such regulations can not, of course, make or unmake state officers. The term as there used is purely one of convenience to distinguish

a state adjutant general, who has not complied with the federal regulations and not been officially recognized by the War Department, from one who has. The former is there denominated a "civil adjutant general" and the latter a military adjutant general. But as defendant here had complied with the federal regulations and had been so recognized, there was not in Colorado, at the time of the order of removal, any such position, office or officer, as "civil adjutant general" even in the sense of the federal regulations.

We do not discuss the advisability of giving the Governor arbitrary control of the tenure of the adjutant general or the wisdom of the legislature in depriving him of it, as this court has no concern therewith.

For all the reasons given the judgment is affirmed.

MR. JUSTICE CAMPBELL, not having heard the oral argument, does not participate.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE ADAMS dissent.

MR. CHIEF JUSTICE ALLEN, dissenting. This is an action for the usurpation of an office, brought under section 321 of the Code of 1921, by the people upon the relation of the Attorney General, to test the title of the defendant below to the office of adjutant general. There was a judgment for defendant, and the relator brings the cause here upon writ of error.

The defendant was appointed adjutant general in 1922 by the Governor then in office. The defendant duly qualified for the office, and was still lawfully exercising the same on or about January 13, 1925, when the governor removed, or attempted to remove, him from the office, summarily. This action was commenced January 16, 1925.

The defendant's appointment was authorized by chapter 183, Session Laws of 1921. The first two sections of that act are as follows:

"Section 1.   That the Governor shall be Commander-in-Chief of the organized militia except when called into the service of the United States, and he shall appoint the Adjutant General who shall be Chief of Staff; *Provided,* That the Adjutant General shall have served as a field or line officer in the United States Army or National Guard and attained the rank of Major.

"Section 2.   The Adjutant General and all general field and staff officers shall be appointed by the Governor.   The Adjutant General and all officers shall be appointed as provided for in National Guard Regulations.

"No staff officer, including officers of the Pay, Inspection, Subsistence and Medical Departments, appointed since the 25th day of May, 1917, shall continue to serve as an officer of the National Guard of this State under his present commission unless he shall have had previous military experience previous to the date of said commission.

"All officers hereafter appointed shall have had previous military experience and shall hold their positions until they shall have reached the age of sixty-four years, unless retired prior to that time by reason of resignation, disability, or for cause to be determined by a court martial or efficiency board, legally convened for that purpose, and that vacancies among said officers shall be filled by appointment from officers or members of the National Guard of the State of Colorado."

The defendant contends that inasmuch as he is still under the age of sixty-four years, he is entitled to remain in, and hold, the office under that clause in section 2, above quoted, which provides that "all officers hereafter appointed * * * shall hold their positions until they shall have reached the age of sixty-four years, * * *."

The question to be determined is whether section 2 is applicable, or governs, this case; in other words, whether the adjutant general is one of the "officers" referred to, and contemplated, in the clause last above quoted.

If we were to consider only this clause, disassociated from its context and other parts of the Act, the conclu-

sion would be that the adjutant general is one of the "officers" referred to, and, therefore, entitled to hold his position until he "shall have reached the age of sixty-four years." But words and phrases of a statute are to be understood as used, not in any abstract sense, but with due regard to the context, and in that sense which best harmonizes with all other parts of the statute. 36 Cyc. 1131.

In the early part of section 2, hereinbefore quoted, the legislature twice uses the expression: "The adjutant general and all officers." If it had intended that the adjutant general is included in the word "officers", the most apt expression would have been: "The adjutant general and all *other* officers." Since the legislature evidently used the word "officers" twice in section 2 in a sense not including the adjutant general, it is to be presumed that when it used the word the next time, in the same section, it used it in the same sense.

"Where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout." 36 Cyc. 1132.

The legislature used the term "officers" in a sense not including the Adjutant General because it was legislating chiefly with reference to the National Guard, and the office of adjutant general is not an office in the National Guard.

It is seen from the concluding part of section 2, hereinbefore quoted, that vacancies among said "officers" shall be filled by appointment from officers or members of the National Guard. This too, shows that the legislature did not intend the word "officers" to comprehend the adjutant general, because being merely an officer or member of the National Guard would not qualify him for the office of adjutant general. It is provided in section 1 of the act that he shall be one who "shall have served as a field or line officer in the United States Army or National Guard and attained the rank of Major." "For the purpose of determining the meaning, although not the valid-

ity, of a statute, recourse may be had to considerations
of public policy, and to the established policy of the legis-
lature as disclosed by a general course of legislation." 36
Cyc. 1111.

From all the statutes concerning the militia, in force
in this state prior to the enactment of the act of 1921,
it appears that the policy of the legislature has always
been to make the term of the adjutant general practically
coterminous with that of the governor appointing him,
so that each governor could have or appoint an adjutant
general of his own choice. Public policy would result like-
wise.

In *State v. Ingalls*, 21 Ariz. 411, 189 Pac. 430, the court,
speaking of the office of adjutant general, said: "From
the nature and duty of the office, and the intimate asso-
ciation of the officer with the commander-in-chief of the
National Guard of the state, every reason and considera-
tion would seem to emphasize the necessity of the Gov-
ernor having the power at any time to choose for such of-
fice a person in whose ability and fidelity he could have
implicit confidence; and, before he should be deprived
of that power and right, a clear and explicit intention
to do so should be made to appear."

It is stated in the brief of defendant below, defendant
in error here, that the act of 1921, being our National
Guard Act, was enacted in obedience to the mandate found
in section 2, article 17 of our state Constitution, provid-
ing that the "organization   *   *   *   of the militia shall
conform, as nearly as practicable, to the regulations for
the government of the armies of the United States." We
do not dispute that statement. But it avails defendant
nothing, because no federal statute, and no regulation of
the War Department, affects the tenure of the office of the
adjutant general of a state. The state of Arizona, like
others, has a similar or identical constitutional provision,
yet when its legislature revised its Military Code, in 1921,
it provided that the adjutant general "shall hold office dur-

ing the will and pleasure of the Governor." S. L. Ariz., 1921, p. 318.

Section 293 of the National Guard Regulations issued by the War Department of the national government, in 1922, provides that "the commissions of officers of the National Guard are vacated * * * when they reach the age of 64 years." This does not refer to the office of adjutant general of a state. Other sections of the regulations make this plain, and this situation is not disputed.

We agree with counsel for defendant in error that the General Assembly did intend to conform to federal regulations and to the National Defense Act, when it provided in section 2 of the act of 1921 that "all officers (meaning all officers of the National Guard) * * * shall hold their positions until they shall have reached the age of sixty-four years." The legislature was, in this clause, dealing only with officers of the National Guard and not the adjutant general, just as the federal regulations refer to such officers and not to the adjutant general "of a state" when they fix the tenure of office as terminating at the age of 64 years. The regulations do not fix any tenure whatever for the office of adjutant general of a state, but in section 146 leave this to the "laws of the state."

For reasons above indicated, section 2 of the act of 1921, while it fixes the tenure of officers of the National Guard, does not fix the tenure of the office of adjutant general; in other words, the term "all officers" as used in said section excludes the adjutant general. The trial court erred in holding to the contrary.

The act of 1921 expressly repeals former statutes which fixed the tenure of the office of adjutant general. No term is now fixed, and that being the situation, the officer holds at the pleasure of the appointing power. 29 Cyc. 1371, and cases cited in note 73; 29 Cyc. 1396. In section 304 Throop on Public Officers, the author says: "Where an office is filled by appointment, and a definite term of office is not fixed by a constitutional or statutory provision, the office is held at the pleasure of the appoint-

ing power." And in section 354 of the same work, it is said the appointing power, in such cases, may make the removal without charges.

The governor was authorized to remove the defendant from his office of adjutant general, without cause, or without the intervention of a court martial or efficiency board. It was therefore error to render judgment for defendant.

The judgment should be reversed, and the cause remanded with directions to enter judgment for plaintiff according to the prayer of the relator's complaint.

MR. JUSTICE ADAMS dissenting. I disagree with the majority view of the court for these reasons:

1. The opinion is based upon a false hypothesis. The executive order of the Governor did not purport to *remove* the respondent, as stated in the opinion, but only that he be *"relieved* as civil adjutant general of the state of Colorado." These are two very different matters. Orders relieving officers from their commands, without removing them from the service, are common to army life and are matters of almost every day occurrence in the United States army, without thought of judicial interference. Although the adjutant general be relieved of his command by the commander-in-chief, he still retains his commission as a colonel in the adjutant general's department of the National Guard of Colorado until he shall have reached the age of sixty-four years.

The distinction between removal from the service and relief from a command is marked. Executive and military authorities, like courts, and even individuals, have certain inherent powers and rights and there is nothing in the statute against the one in question. I should think it strange if there were.

Under an article "Militia," prepared by Major General Charles Dick, of the Ohio National Guard and United States Senator from Ohio, and Major George C. Lambert, of the Minnesota National Guard, in 27 Cyc. 489, 501, it is said:

"The command of the organized militia in the several states devolves upon the governor and the officers commissioned by him. The governor may *in the exercise of the discretion vested in him* relieve an officer from command." Citing *State v. Jelks,* 138 Ala. 115, 35 So. 60; *People v. Roe,* 51 App. Div. 494, 64 N. Y. Suppl. 642.

In *State v. Jelks, supra,* it was held that the act of the governor of a state in *relieving* an officer of the National Guard of his command, did not constitute a *removal* of the officer from his office within U. S. Rev. Stat. (1878) sec. 1229, U. S. Comp. Stats. (1901), p. 868, providing that no officer in the military or naval service shall in time of peace be dismissed from the service, except on and in pursuance of a sentence of a court martial.

In *People v. Roe, supra,* it was held that where an order by a commanding officer of the national guard, relieving an officer of a regiment from his command, is approved by the governor, and his application for a reinstatement is denied by the governor, the commanding officer had no authority, without the sanction and approval of the governor, to restore that relieved officer to his command. The court said: "The officer who complains is still an officer as before, and the fact that his command is taken away is the result of a military order of his superior, and he must seek his redress in an appeal to him. Deprivation of command is not a civil injury."

2. The decision of this court ignores and is contrary to the following words in section 7, page 628, Laws 1921: "* * * *Provided,* That the commission of each officer of the National Guard of Colorado, shall continue and remain in force and be subject to the same limitations as to tenure of office as the commissions of officers in the United States Army: * * *."

The above provision is in a section following the parts of the statute quoted in the majority opinion of the court. The statute should be construed together, not separately or in parts, and if there is any inconsistency in the two provisions, the latter should prevail.

The adjutant general is the chief of staff. The commission of the chief of staff in the United States army is limited to four years as to his tenure of office as such chief of staff, *unless sooner relieved.* Barnes Federal Code, sec. 1478, 40 U. S. Stats. 46.

3. Even if the question of the right of the Governor to remove the adjutant general were in issue, I do not agree that it can be done only through the medium of a court martial or efficiency board. I agree with the Chief Justice and also find many other provisions of the Constitutions of the United States and of the state, as well as acts of Congress and army regulations that do not appear to support the opinion of the court.

My objections as above outlined were not suggested in the oral argument or in the briefs of counsel on either side. I think that the members of this court, including myself, should have had the benefit of the views of counsel on both sides concerning these and other matters that appear to me to be vital in the correct determination of a question of such great public importance.

By deciding, and I think, incorrectly deciding, a question not raised by the executive order, and by not deciding or even mentioning the sole question so raised, I fear that the opinion as a whole may be seriously open to its being regarded as obiter dicta.

For the above reasons, I respectfully dissent.