[Civil No. 3609.   Filed April 22, 1935.]

[43 Pac. (2d) 1007.]

WALTER HOFMANN, Chairman of the Board of Pardons and Paroles of Arizona, Plaintiff, v. ANA FROHMILLER, as Auditor of the State of Arizona, Defendant.

Mr. Arthur T. La Prade, for Plaintiff.

Mr. John L. Sullivan, Attorney General, and Mr. A. I. Winsett, Assistant Attorney General, for Defendant.

McALISTER, J.—On February 12, 1935, Walter Hofmann, as Chairman of the Board of Pardons and Paroles, purchased for the use of that body supplies

in the sum of $1.06, and three days later presented to the state auditor, Ana Frohmiller, a claim for this sum, properly verified and approved, and requested her to allow it and to draw a warrant in payment of it. Acting upon the advice of the Attorney General that the state was then without a board of pardons and paroles and that payments for salary or expenses to anyone claiming to be a member thereof would be illegal, the auditor refused to comply with this request and disallowed the claim. A few days later Hofmann filed in this court a petition praying for the issuance of an alternative writ of *mandamus*, directing her to audit and settle the claim and draw her warrant therefor, or show cause why she had not done so, and upon a consideration of the petition containing, among others, the following allegations, the writ was granted: That at all times referred to herein, including the first Monday in January, 1935, when the Attorney General and the superintendent of public instruction, elected in November, 1934, took charge of their respective offices he was the duly appointed, qualified and acting citizen member of the board of pardons and paroles; that up to the filing of this petition on February 21, 1935, those officers had not declared the office of citizen member of the board of pardons and paroles vacant, or appointed anyone to fill it; that he has continued since the first Monday in January to discharge the duties of this office; and that there has existed since then an appropriation made by law for the payment of claims of this character.

In her answer the auditor admits that it is her duty to allow the claim and draw a warrant in payment of it if it is a proper charge against the appropriation made by the legislature for the board of pardons and paroles, and she does not question that the plaintiff

Hofmann was a member of the board up to the first Monday in January, 1935, but she denies that he has been since that time and, for this reason, alleges that he had no authority on February 12, 1935, to expend any portion of the appropriation in question for any purpose whatever. It is apparent from these respective contentions that the question presented by the proceeding is whether Walter Hofmann was a member of the board of pardons and paroles when he made the purchase on February 12, 1935.

The answer to this query must be found in the pertinent provisions of the statute, the first of which is section 5219, Revised Code of 1928, reading as follows:

"Board of pardons and paroles. There is hereby created a board of pardons and paroles, to consist of the state superintendent of public instruction, the attorney general, and a third member to be selected by those two. Such third member shall be known as the citizen member of said board and shall be the chairman thereof. The citizen member of said board shall receive as compensation for his services the sum of seven dollars per day while in attendance at the meetings of the board and each of said members of said board shall receive his necessary and actual traveling and hotel expenses while engaged in the performance of his duties. Said board shall organize by electing the citizen member as chairman, and the parole clerk of the state prison shall act as secretary of said board; said board shall meet quarterly at the state prison, and at such other times as they may deem necessary."

This section was enacted by the first legislature of the state of Arizona and, upon submission to the people by referendum petitions, approved by them at the regular election on November 3, 1914, and by proclamation of the Governor declared to be in effect on December 14, 1914. Pursuant to its provisions the

Attorney General and the superintendent of public instruction, soon thereafter, complied with that portion of it directing them to appoint a citizen member of the board and then made their appointee chairman. Upon this action being taken the board became a duly organized existing body, but whether it has at all times since and will, during the life of this statute, continue to be such, regardless of the change from time to time in the personnel of its membership, seems to mark the difference between the contentions of the respective parties to this litigation. The plaintiff's position is that the board has been in existence since it was organized following its creation in 1914, because the state has at no time since then been without an Attorney General, a superintendent of public instruction and a citizen member of the board. The defendant contends, upon the other hand, that even though the state has had, during all this period, an Attorney General and a superintendent of public instruction who have been *ex-officio* members of the board this does not signify that there has been throughout these years a continuing board of pardons and paroles, because the statute contemplates that a new board shall be created every two years at least, that is, with the incoming of a new appointing power. Because, she claims, the terms of the Attorney General and the superintendent of public instruction end the first Monday in January following a general election, the term of the citizen member of the board appointed by them who serves during their pleasure ceases automatically at the same time and there arises a vacancy in that position which it is the duty of those chosen for these two offices at the preceding general election and that day entering upon their new term to fill.

■■ It is plain that the board of pardons and paroles upon its organization following its creation in 1914, became an existing body and, in view of the fact that two of those who compose its membership are occupants of permanent, constitutional offices and the third a person appointed by them to serve during their pleasure, that it has remained such since that time. The individuals elected to the offices of Attorney General and superintendent of public instruction are required to qualify before the beginning of their terms on the first Monday in January following their election; if they are persons who have been re-elected they continue on the board of pardons and paroles without interruption and if elected for the first time they automatically become members of it the moment their terms begin, but the board itself, notwithstanding the changes in the personnel of its membership, continues as an existing body. Neither the death nor resignation of one of the elected members would have any effect upon its existence or interfere in the slightest with the rights and duties of the other member or of the chairman. Notwithstanding these eventualities the latter would continue to occupy the position as citizen member, it being impossible to terminate his right to do so, except in one of these ways: The Attorney General and the superintendent of public instruction may declare the position vacant or appoint another to discharge its duties; or one of the ten events which section 94, Revised Code of 1928, provides shall produce a vacancy in an office may happen, among which are the death, insanity or resignation of the officer, his removal from office or his conviction of a felony or of any offense involving a violation of his official duties.

The defendant suggests that in addition to those contemplated in section 94 another method of creat-

ing a vacancy is provided for in section 56, and by this she refers to the fact that the appointing power may withdraw its consent that the officer longer serve. It is true that this consent may be withdrawn, but instead of its constituting a method in addition to those enumerated in section 94, it merely states one of them, removal from office, in a different way. Withdrawing consent in a case of this kind would be the same in effect as declaring the office vacant or appointing another to discharge its duties, since either would amount to a removal from office, but this cannot be done by one member of the board any more than the appointment to the position in the first instance could have been made by one member. It took both the Attorney General and the superintendent of public instruction to give Hofmann the position and there can be no question but that their joint action is necessary to withdraw their consent that he longer serve or, to state it differently, to declare the office vacant or appoint another to fill it. The desire of one of them to withdraw consent that he continue in the position, or appoint another to discharge its duties, is wholly ineffective until the other member is willing to and does cooperate with him in giving expression to this desire in the proper way. "Until the board, in some sufficient manner," said the court in *State ex rel. Bergin* v. *Goodrich,* 86 Conn. 68, 84 Atl. 99, in discussing the right of a clerk of a board of education appointed to serve at the pleasure of the board, "should indicate that its pleasure was that his existing relations to it should cease, he would be no intruder. It has never passed a vote directly to that effect."

Section 5219 does not provide, or even suggest, that the term of the citizen member shall cease when that of those who appointed him does, or that he shall be appointed every two years. If the statement in the

last sentence of this section, that ''Said board shall organize by electing the citizen member as chairman,'' was meant, in the light of the requirement of its second sentence that the citizen member shall be the chairman of the board, to serve any purpose at all, it was merely to direct the course to be followed by the board upon its organization after its creation in 1914, and did not refer to the action it should take every two years or each time a change in the office of Attorney General or superintendent of public instruction or both should occur. The fact that the occupants of these two offices are empowered to appoint the citizen member to serve during their pleasure and that they have the authority to discharge him and. select another whenever they wish to, whether it be every two years, less frequently or more so, leads to the conclusion that his term of office does not as a matter of law expire with theirs. Such, in fact, was the holding of the court in *State ex rel. Bergin* v. *Goodrich, supra,* when it was confronted with a situation very similar to this. °In discussing the change in the membership of the board and its effect on the clerk's tenure of office, the court said:

''The fact that the board's membership, as it then was, became entirely changed two years later did not affect its legal identity, or, by force of the change, *terminate his tenure of office.*''

The situation of the citizen member of the board is the same as that in which the state land commissioner would find himself after the first Monday in January following a general election if the state land board entering upon its duties that day should fail to make an appointment of a land commissioner. The terms of the five state officers who compose that board and appoint the commissioner begin that day and, regard-

less of the fact that part of them may have been re-elected and a part elected for the first time, the board is still the state land board and the term of the land commissioner theretofore appointed to serve indefinitely continues until the board appoints someone else, or one of the events enumerated in section 94 occurs. In fact, such are the conditions under which the state land commissioner is serving at the present time, yet no one would contend that he is not legally occupying the office; and this would be true even though a majority of the five members of the board were dissatisfied with him and should each say to him that his occupancy of the office was no longer desired, because the only legal way in which the majority of the board could give expression to such a desire would be by passing a vote to that effect at a meeting of a quorum of its members.

However, even though the contention of the defendant that the term of the citizen member of the board ends as a matter of law on the first Monday in January following a general election were well founded, it does not follow, in view of the provision of section 56, Revised Code of 1928, that Hofmann has been illegally discharging the duties of the office since the first Monday in January. This section reads as follows:

"Term, where not fixed, must hold until successor qualifies. Every officer whose term is not fixed by law shall hold at the pleasure of the appointing power. Every officer must continue to discharge the duties of his office, although his term has expired, until his successor has qualified. Vacancies occurring in any office, or in the membership of any board or commission, shall be filled only for the unexpired term of such officer or member."

It is, of course, clear that section 5219 does not fix the term of the citizen member of the board of par-

dons and paroles and equally so that he serves during the pleasure of the Attorney General and the superintendent of public instruction who, so far as he is concerned, constitute the appointing power. *Cole* v. *Territory,* 5 Ariz. 137, 48 Pac. 217; *State* v. *Ingalls,* 21 Ariz. 411, 189 Pac. 430. But even if Hofmann's term did expire on the first Monday in January, when that of these two officers did, he is one of those included within the language of section 56 that "every officer must continue to discharge the duties of his office, although his term has expired, until his successor has qualified." The requirement that *every officer* continue his duties until his successor qualifies, even though his term has expired, applies as well to one whose term may have ended because that of those who appointed him to serve during their pleasure has expired as it does to one appointed or elected to serve a definite fixed term, which has terminated. The purpose of the provision, namely, to prevent a break in the conduct of the business the office was created to carry on, is just as applicable in the one instance as the other, hence the manner in which the expiration of the term is brought about is wholly immaterial.

Whether or not, therefore, Hofmann's term expired the first Monday in January last, there is no escape from the proposition that since that time he has occupied the office legally and will continue to do so until the Attorney General and the superintendent of public instruction, acting together, appoint someone else to the office or it becomes vacant by the happening of one of the events enumerated in section 94, *supra.* The fact that one of these officers wishes him to remain and the other does not is unfortunate because it was clearly the purpose of the law that he should be approved by both of them, one as much so

as the other, but their failure to agree upon a successor does not have the effect of discharging him; it rather illustrates the wisdom of the rule requiring an officer to perform the duties of his office until his successor has qualified, for in the absence of such a provision there would have been no one to carry on the work of the office during the period the Attorney General and the superintendent of public instruction have been unable to agree. It is far better for the public service to have had someone look after the work of the office during this period, even though he is unacceptable to one of those constituting the appointing power, than it would have been to permit the duties of the office to go unperformed.

Inasmuch, therefore, as Hofmann is still the citizen member of the board of pardons and paroles, and there are sufficient funds in the appropriation made by the legislature for the expenses of the board to pay the claim, it is the duty of the defendant to allow it and draw her warrant in payment of it. Hence, the alternative writ heretofore issued is made peremptory.

LOCKWOOD, C. J., and ROSS, J., concur.