Eugene E. WIGGINTON

v.

Reginald A. CENTRACCHIO et al.

No. 2001–164–A.

Supreme Court of Rhode Island.

Dec. 26, 2001.

Robert B. Mann, Providence, for plaintiff.

Michael Fitzpatrick/Leonard J. DePasquale/Richard B. Woolley, Andrew J. McKay/Frank Hagen, Providence, for defendant.

BEFORE: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

WILLIAMS, Chief Justice.

The United States Court of Appeals For the First Circuit has requested from this

Court its opinion with regard to two certified questions so as to assist that court in resolving a wrongful termination claim under 42 U.S.C. § 1983. The First Circuit sought clarification of the meaning of G.L. 1956 § 30–3–13, a statute arguably entitling Maj. Eugene E. Wigginton (plaintiff), to remain in his position in the Rhode Island Army National Guard (RIANG) until the age of sixty. This Court reviewed the certification order and determined that the questions, as certified, required resolution of issues of fact, a task not permitted to us by Article I, Rule 6 of the Supreme Court Rules of Appellate Procedure.[1] Thus, we issued an order modifying the original questions and setting forth the single question to which we would respond.

"What is the meaning of the term 'staff corps and departments' contained in General Laws 1956 § 30–3–13?"

If the plaintiff can establish that he was a member of the "staff corps and departments," he might have a constitutional or statutory basis upon which to contest his discharge. Absent a definition of the terms, no court is able to properly address plaintiff's claims.

Having considered all relevant authorities, we respond that "staff corps and departments" is a vestigial term that cannot fairly be construed to have any meaning in the RIANG's modern military organization or any application to commissioned officers since 1956.

# I

## Facts and Procedural History

The facts are taken largely from the opinion of the First Circuit. *See Wigginton v. Centracchio*, 205 F.3d 504 (1st Cir.2000). In April 1967, plaintiff began his military career in the United States Marine Corps. In 1970, after three years of service, plaintiff was honorably discharged. The plaintiff's military career was revived in 1979, when he was commissioned to serve in the United States Army Reserve. As an Army reservist, plaintiff was an officer of the RIANG and the Army National Guard of the United States (ANGUS). During seventeen years of military service, plaintiff achieved the rank of major and served in the Military Police Corps. By 1996, plaintiff had completed nearly twenty combined years of military service.

Pursuant to National Guard Regulation 635–102, a selective retention board convened in May 1996 to evaluate plaintiff's future in the RIANG. The selective retention policy provides that only certain officers may be retained beyond twenty years of service. The regulation ensures that only the most qualified officers will be retained for assignment to relatively few higher-level positions. After the meeting, plaintiff received a letter from defendant Reginald A. Centracchio, adjutant general of the RIANG (defendant), informing him that he was not selected for retention. The plaintiff was honorably discharged in July 1996.

The plaintiff filed an action in the Rhode Island Superior Court pursuant to 42 U.S.C. § 1983, contesting his discharge from the RIANG. The defendant removed the action to the United States District Court for the District of Rhode

---

**1.** Article I, Rule 6 of the Supreme Court Rules of Appellate Procedure provides in part:

"This [C]ourt may answer questions of law certified to it by * * * a Court of Appeals of the United States * * * when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this [C]ourt."

Island. The parties filed cross-motions for summary judgment. The trial judge granted defendant's motion because she found plaintiff had not established that he was a member of the "staff corps and departments." *See Wigginton v. Centracchio,* C.A. No. 96–530ML (D.R.I. Aug. 14, 1998).[2] The plaintiff appealed to the United States Court of Appeals for the First Circuit.

The First Circuit concluded that the viability of both plaintiff's claims will depend upon this Court's construction of § 30–3–13, and in particular, the meaning of "staff corps and departments." *See Wigginton,* 205 F.3d at 514, 517–18. We respond to that certified question as follows.[3]

## II

### Analysis

### Standard of Review

 "This Court is the final arbiter with respect to questions of statutory construction." *New England Expedition–Providence, LLC v. City of Providence,* 773 A.2d 259, 263 (R.I.2001) (citing *State v. Flores,* 714 A.2d 581, 583 (R.I.1998)). In the face of this task, we "adhere [ ] to the basic proposition of establishing and effectuating the intent of the Legislature[, * * * which] is accomplished from an examination of the language, nature, and object of the statute." *In re Estate of Gervais,* 770 A.2d 877, 880 (R.I.2001) (quoting *State v. Pelz,* 765 A.2d 824, 829–30 (R.I.2001)). "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Rhode Island Temps, Inc. v. Department of Labor and Training Board of Review,* 749 A.2d 1121, 1126 (R.I.2000) (quoting *Providence & Worcester Railroad Co. v. Pine,* 729 A.2d 202, 208 (R.I.1999)).

### RIANG Organization

We begin our analysis by discussing the importance of maintaining organizational consistency between the RIANG and its federal counterparts. The history of the national guard may be traced back to the earliest days of Colonial militia. However, it was not until 1901 that President Theodore Roosevelt saw fit to propose that its organization be identical to that of the War Department (now the Department of the Army). *See Perpich v. Department of Defense,* 496 U.S. 334, 341–42 & n. 10, 110 S.Ct. 2418, 2423 & n. 10, 110 L.Ed.2d 312, 322–23 & n. 10 (1990). Congress reacted to President Roosevelt's idea and passed legislation providing that "every able-bodied male citizen of the respective States, * * * who is more than eighteen and less than forty-five years of age, and shall be divided into two classes—the organized militia, to be known as the National Guard of the State * * * and the remainder to be known as the Reserve Militia." *Id.* at 343, n. 11, 110 S.Ct. at 2424 n. 11, 110 L.Ed.2d at 323 n. 11. Most importantly, the statute created a table of organization for the national guard "conforming to that of the Regular Army, and provided that federal funds and Regular Army instructors should be used to train its members." *Id.*

---

**2.** The plaintiff also argued that defendant's failure to provide a statement of reasons for non-selection deprived him of procedural due process. This claim was also disposed of on summary judgment. *See Wigginton v. Centracchio,* 205 F.3d 504, 508–09 (1st Cir.2000).

**3.** The Court is grateful to the United States Navy for its amicus curiae brief.

at 342, 110 S.Ct. at 2423, 110 L.Ed.2d at 323. By 1933, the ANGUS and the RIANG were considered "two overlapping but distinct organizations." *Id.* at 345, 110 S.Ct. at 2425, 110 L.Ed.2d at 325. All persons who enlisted in the RIANG from thereon were simultaneously enlisted in the ANGUS, but retain their status as RIANG officers until called to federal service. *See id.* at 345–46, 110 S.Ct. at 2425, 110 L.Ed.2d at 325; *see also* 10 U.S.C. § 12211; 32 U.S.C. § 301; G.L.1956 § 30–3–1.

By accepting its members' dual status, the RIANG is able to secure federal funding. *See* 32 U.S.C. § 107. In exchange, the RIANG must comply with federal regulations. *See* 32 U.S.C. § 108. Furthermore, the Legislature has expressly agreed to pattern the RIANG according to federal specifications.[4]

Therefore, the term "staff corps and departments" cannot be construed to conflict with the organization of the ANGUS and the United States Army as set forth in the United States Code.

### G.L.1956 § 30–3–13

Section 30–3–13 implies that there are commissioned officers serving in the RIANG that are considered officers of the "staff corps and departments." Section 30–3–13 provides:

"**Previous military experience of officers—Retirement—Vacancies.**—All commissioned officers of the *staff corps and departments*, hereafter appointed,

shall have had previous military experience, except chaplains, officers of the judge advocate general's corps, and medical corps officers. They shall hold their positions until they shall have reached the age of sixty (60) years, unless retired prior to that time by reason of resignation or disability, or for cause to be determined by an efficiency board or a court-martial legally convened for that purpose. Vacancies among these officers shall be filled by appointment from the commissioned officers of the national guard or from such other civilians as may be *specifically qualified for duty therein.*" (Emphases added.)

The plain language of § 30–3–13 reveals that chaplains, officers of the judge advocate general's (JAG) corps, and medical corps officers are commissioned officers of the "staff corps and departments." Further, the word "except" placed before the aforementioned groups means that the Legislature also recognized other commissioned officers as members of the "staff corps and departments."

■ "Under the doctrine of '*noscitur a sociis*,' the meaning of questionable or doubtful words or phrases in a statute may be ascertained by reference to the meaning of other words or phrases associated with it." *State v. DiStefano*, 764 A.2d 1156, 1161 (R.I.2000) (quoting Black's Law Dictionary 1060 (6th ed.1990)). The term "staff corps and departments" is found also in § 30–3–11, which provides that:

"Persons hereafter commissioned as officers of the national guard shall be se-

---

**4.** General Laws 1956 § 30–3–1 provides that: "The national guard shall consist of such number of federally recognized general officers, officers, warrant officers, and enlisted persons, duly commissioned, warranted, or enlisted therein, including officers and enlisted persons of the *staff corps and depart-* *ments,* and organized as to branch or arm of service into such federally recognized units, organizations, corps, departments, or otherwise as shall be authorized by the laws of the United States and the regulations issued thereunder." (Emphasis added.)

lected from the following classes: \* \* \* (5) For the technical branches or *staff corps and departments*, such other civilians as may be specially qualified for duty therein \* \* \*." (Emphasis added.)

Thus, § 30–3–11 indicates that other members of the "staff corps and departments" may possess technical knowledge *or* special qualifications.

The term "staff corps and departments" appears with frequency in other state military codes.[5] Several statutes similar to § 30–3–11 employ the term "technical" to modify "staff corps and departments."[6] The State of Utah has a statute most similar to §§ 30–3–13 and 30–3–11(5) in its military code, which defines three additional "staff corps or departments." *See* Utah Code Ann. § 39–1–30 (2001).[7] Section 39–1–30 of the Utah Code provides in pertinent part:

"**Officers of the National Guard— Commissions.** \* \* \* (2) \* \* \* (f) for the technical branches and staff corps or departments, other civilians as are especially qualified for that duty.

**5.** Ten states utilize the term "staff corps or departments" in statutes governing commissions and composition of state National Guard officers, however, none define the term. *See* Ariz.Rev.Stat. § 26–122(B) (2000); Cal.Mil. & Vet.Code §§ 210(b), 230 (Deering 2001); Colo.Rev.Stat. § 28–3–304 (2001); D.C.Code Ann. § 39–306 (2001); 20 Ill.Comp. Stat. 1815/9 (2001); Md.Code Ann., art. 65 § 20 (2001); Minn.Stat. § 192.105 (2000); Mo.Rev.Stat. §§ 41.100, 41.490 (2000); Neb. Rev.Stat.Ann. § 55–137 (2001); Wash.Rev. Code Ann. § 38.04.040 (2001).

**6.** *See* Ind.Code Ann. § 10–2–3–4(d) (2001) ("No person shall be eligible for appointment to any staff \* \* \* corps, or department unless that person has the technical training requisite to qualify for such appointment \* \* \*."); Md.Code Ann., art. 65 § 20 (2001) ("\* \* \* for the technical branches or staff corps and departments, such other civilians as may be specially qualified for duty therein"); S.D.

(3) However, officers *appointed to staff corps or departments, or other staff positions, including officers of the pay, inspection, subsistence, and medical departments*, shall have had previous military experience, and hold their positions until they shall have reached 64 years of age, unless separated prior to that time by resignation, disability, or for other causes to be determined by a military court, court-martial, or legally organized board convened for that purpose. Vacancies among these officers shall be filled by appointment as provided in this section." (Emphasis added.)

Thus, in Utah the "staff corps and departments" include the pay department, inspection department, subsistence department and medical department. No court, however, has directly addressed the scope of the term.[8]

### Historical Army Organization

This Court notes that the phrase "staff corps and departments" does not appear in any modern United States Army table of

Codified Laws § 33–4–3 (Michie 2001) (same); Utah Code Ann. § 39–1–30(2)(f) (2001) (same).

**7.** North Dakota also has a similar statute; however, it is of no assistance to the Court. *See* N.D.Cent.Code § 37–02–07 (2001).

**8.** The Colorado Supreme Court faced a similar situation when an adjutant general claimed he was entitled to tenure after being removed from office. *See People, ex rel. Boatright v. Newlon*, 77 Colo. 516, 238 P. 44, 44 (1925). The 1921 statute at issue provided that "all officers" were entitled to remain in the Colorado National Guard until age sixty-four. *See id.* at 46. The court found that the adjutant general was entitled to such tenure. *See id.* That statute did not, however, include any reference to "staff corps and departments." *See id.*

organization, or in the United States Code. To ascertain the origin of the term it is necessary to look to historical Army organization.

After the War of 1812, Secretary of War John C. Calhoun separated the War Department into two groups—a departmental staff and the Army in the field (otherwise referred to as the "line"). *See* James E. Hewes, Jr., *From Root to McNamara: Army Organization and Administration, 1900–1963* 3 (Center of Military History 1975). The departmental staff consisted of the heads of individual departments (or bureaus) and each department performed a "specialized function or service." *Id.* Some of the staff departments were referred to as "corps," including the corps of engineers and signal corps. Some were referred to as "departments," including the JAG department, the adjutant general's department, the quartermaster's department, the subsistence department, the pay department, the medical department and the ordnance department.[9]

Thus, in the early nineteenth century, the term "staff corps and departments" referred to groups of officers performing a "specialized function or service." The scope of "staff corps and departments," however, evolved because of the continuous reorganization of the War Department. For example, in 1917, the quartermaster, subsistence and pay departments were consolidated into a single quartermaster corps. *See Hewes,* at 17, 21–22. One year later, the portion of the quartermaster corps that formerly was the pay department emerged as the finance department. *See id.* at 48. At the same time, a new tank corps was formed from members of the ordnance department and corps of engineers. *See id.* Next, the chemical warfare department and the chaplains department became independent departments. *See id.* at 51.

The organization of the RIANG mirrored the organization of the War Department. In 1929, commissioned officers of the RIANG were divided into two groups, the "staff corps and departments" and the "line." 1929 R.I.Nat'l Guard Adj. Gen.Ann.Rep. 19. The "staff corps and departments" consisted of the adjutant general's department, the quartermaster corps, the signal corps, the medical corps, the medical administrative corps, inspector general's department, the JAG corps, the ordnance department, the dental corps, the veterinary corps and the chaplains. *See id.*

However, by World War II, the terms "staff corps" and "departments" ceased to exist. *See Hewes,* at 90. Instead, the War Department began using the terms "technical services" or "administrative services." *Id.* at 97, 99. In 1942, there were seven technical services[10] and four administra-

---

9. The defendant directs us to examine a historical military dictionary that corroborates the foregoing historical discussion. *See* Edward S. Farrow, *A Dictionary of Military Terms;* Colonel H.L. Scott, *Military Dictionary* 570–71 (1864) ("*Staff Corps,* or staff departments. These are special corps or departments, whose duties are confined to distinct branches of the service. * * * The ordnance, quartermasters', subsistence, medical and pay departments are such staff departments."). The defendant also pointed us toward several books that describe the meaning of "staff corps and departments" in reference to the same groups. *See The Army of the United States* (Theo F. Rodenbough & William L. Haskin, ed. 1896); Russell F. Weigley, *Towards An American Army: Military Thought From Washington to Marshall* 166–67 (1962).

10. The seven technical services included the quartermaster corps, the corps of engineers, the medical department, the ordnance depart-

tive services.[11] However, only some of the technical or administrative service corps were formerly considered "staff corps and departments." In 1947, the War Department was officially renamed the Department of the Army. *See id.* at 167. At that time, the armed forces were reorganized into a centralized body under the Department of Defense similar to its present structure. *See id.* at 310–11.

### Modern Army Organization

Today, the Army is divided into the basic branches [12] and the special branches.[13] *See* 10 U.S.C. §§ 3063, 3064, 3067. There is no group of officers deemed members of the "staff corps and departments." Further, branches that were historically members of the "staff corps and departments" are now found in both the basic and special branches of the Army. When the Legislature enacted § 30–3–13 in 1956, the Department of the Army already had been reorganized. Consequently, the "staff corps and departments" no longer existed. We must assume then that the Legislature adopted the provisions governing the RIANG without intending to have its organization conflict with its federal counterparts. This must be true since § 30–3–1 expressly provides that the Legislature intends for the RIANG to be "organized as to branch or arm of service into such federally recognized units, organizations, corps, departments, or otherwise as shall be authorized by the laws of the

United States and the regulations issued thereunder."

### Conclusion

■ In conclusion, we find that the term "staff corps and departments" is a vestigial term that cannot fairly be construed to have any meaning in modern military organization or application to presently commissioned officers. This Court is constrained to make such a conclusion because history has wrought such substantial change to the organization and structure of the United States Army and the RIANG. To conclude otherwise would permit the First Circuit to consider plaintiff's membership within a group that no longer exists. We decline to permit such an absurd result. *See In re Estate of Gervais*, 770 A.2d at 880 (citing *Hargreaves v. Jack*, 750 A.2d 430, 435 (R.I.2000)).

---

ment, the signal corps and the chemical warfare department.

**11.** The administrative services included the adjutant general's office, the office of the JAG, the finance department and the office of the provost marshal general's department.

**12.** The twelve basic branches are the infantry, armor, artillery, corps of engineers, signal corps, adjutant general's corps, quartermaster

corps, finance corps, ordnance corps, chemical corps, transportation corps, and military police corps.

**13.** The eight special branches are the JAG corps, the chaplains, the medical corps, the veterinary corps, the army nurse corps, the medical service corps and the army medical specialist corps.