# United States Court of Appeals

## For the First Circuit

_____

No. 98-2053

EUGENE E. WIGGINTON,

Plaintiff, Appellant,

v.

REGINALD A. CENTRACCHIO, ET AL.,

Defendants, Appellees.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

_____

Before

Torruella, Circuit Judge,

Cyr, Senior Circuit Judge,

and Pollak,* Senior District Judge.

_____

Robert B. Mann and Mann & Mitchell on brief, for appellant.
Leonard J. DePasquale, Staff Judge Advocate, Rhode Island Army
National Guard, and Richard B. Woolley, Assistant Attorney General,
Department of Attorney General, on brief, for appellees.

_____

September 4, 2002

_____

_____
* Of the Eastern District of Pennsylvania, sitting by designation.

**Pollak, District Judge**.  This litigation has traveled a tortuous path -- begun in a Rhode Island trial court, removed to the United States District Court for the District of Rhode Island, appealed to this court, forwarded by this court to the Supreme Court of Rhode Island with a request for instruction on questions of Rhode Island law, and, now, returned to this court for final disposition of the pending appeal in the light of the authoritative explication of Rhode Island law provided by the state Supreme Court.  In this Court's prior opinion, Wigginton v. Centracchio, 205 F.3d 504 (1st Cir. 2000), as predicate for our announcement of certain interim rulings and for our invocation of the aid of the Supreme Court of Rhode Island, we narrated in considerable detail the events giving rise to this litigation and the proceedings in the District Court.  In the first section of today's opinion we will present a compressed version of that narrative.  In the second section of this opinion we will summarize the interim rulings announced in our prior opinion, culminating in an explanation of why we found it appropriate to solicit the assistance of Rhode Island's highest court with respect to questions of Rhode Island law that seemed likely to be controlling.  In the third section of this opinion we will set forth the substance of that court's responsive ruling and apply those teachings to the pending appeal.

**I.  The events leading to litigation, and the proceedings in the District Court**

**A.  The events leading to litigation**:

Appellant Eugene E. Wigginton served in the Marines from 1967 to 1970 and was then honorably discharged. In 1979 Wigginton was commissioned as a second lieutenant in the United States Army Reserve and, concomitantly, in the Rhode Island Army National Guard ("RIANG"). He received regular promotions, and by 1996 -- the year in which the event triggering this litigation took place -- Wigginton, by then forty-six years old, had almost twenty years of aggregate service in the Marines and RIANG and had attained the rank of major. In January of 1996 Wigginton was advised that in May of that year his status would be considered by a Selective Retention Board, pursuant to National Guard Regulation ("NGR") 635-102. The stated purpose of NGR 635-102 was to "[e]nsur[e] that only the most capable officers are retained beyond 20 years of qualifying service for assignment to the comparatively few higher level command and staff positions." Of the ten RIANG officers whose status was considered at the May 1996 session of the Selective Retention Board, four -- of whom Wigginton was one -- were recommended for non-retention. Pursuant to the Board's recommendation, Brigadier General Reginald E. Centracchio, Adjutant General of Rhode Island, then notified Wigginton that he was to be separated from RIANG as of July 13, 1996; separation followed on that date.

In September of 1996 Wigginton filed a two-count § 1983 (42 U.S.C. § 1983) suit against Centracchio and the State of Rhode Island in the Superior Court for Providence County. The first of the two § 1983 counts charged that termination of Wigginton's RIANG

commission constituted deprivation without due process of law of a constitutionally protected property right to continue as a commissioned officer until age sixty -- a substantive right assertedly embodied in § 30-3-13 of Rhode Island General Laws. That statutory provision, part of the Rhode Island military code enacted by the Rhode Island Legislature in 1956, is as follows:

> All commissioned officers of the staff corps and departments, hereafter appointed, shall have had previous military experience, except chaplains, officers of the judge advocate general's corps, and medical corps officers. They shall hold their positions until they shall have reached the age of sixty (60) years, unless retired prior to that time by reason of resignation or disability, or for cause to be determined by an efficiency board or a court-martial legally convened for that purpose. Vacancies among these officers shall be filled by appointment from the commissioned officer of the national guard or from such other civilians as may be specifically qualified for duty therein.

R.I. Gen. Laws § 30-3-13.

The second § 1983 count, sounding in procedural due process, contained two elements. One element was a claim that the criteria prescribed by NGR 635-102 as governing the retention/non-retention decision had not been followed in Wigginton's case. The other element was a claim that the absence of any explanation of the grounds for the non-retention decision constituted a fatal due process flaw.

B. **The proceedings in the District Court**

Centracchio removed the case to the District Court and then filed a motion to dismiss. The Magistrate Judge to whom the case

-4-

had been referred recommended to the District Judge that the motion to dismiss be granted on the ground that claims arising in the military service were non-justiciable. The District Court, disagreeing with the Magistrate Judge, denied the motion to dismiss. The District Judge ruled that damage actions arising from military service were not justiciable, but that an equitable action -- such as Wigginton's, seeking reinstatement in commissioned status -- could be entertained by an Article III court. The District Court then authorized the parties to engage in discovery addressed to the meaning of R.I. Gen. Laws § 30-3-13, the Rhode Island statute relied on by Wigginton in the first count of his complaint, with a view to determining whether Wigginton had been a "commissioned officer [] of the staff corps and departments" within the meaning of the statute. At the close of discovery, Centracchio and Wigginton both filed motions for summary judgment.

The District Court granted Centracchio's motion for summary judgment. With respect to Wigginton's first count, the District Court found that neither Wigginton nor Centracchio had presented evidence that gave the statutory phrase "staff corps and departments" any cognizable meaning. The District Court then ruled that, since Wigginton as plaintiff had the burden of establishing the legal groundwork for his substantive due process claim, his inability to demonstrate that he was an "officer [] of the staff corps and departments" meant that the claim presented in the first count of the complaint "must fail." The District Court then went on to address Wigginton's procedural due process claims -- the

claims presented in the second count -- and found them without merit.

Wigginton appealed to this court from the order of the District Court granting summary judgment and dismissing his complaint.

## II. **This court's prior opinion**

In addressing Wigginton's appeal we first considered Centracchio's contention that Wigginton's claims were non-justiciable. We held that the District Court had correctly determined that, since Wigginton was not seeking damages but rather the equitable relief of reinstatement as a commissioned RIANG officer, his claims were justiciable.

We then turned to the District Court's grant of summary judgment in favor of Centracchio. First we considered the dismissal of Wigginton's second count alleging a lack of procedural due process. Wigginton had not pursued on appeal his contention that the Selective Retention Board had not adhered to the decisional criteria prescribed by NGR 635-102; accordingly, we confined our attention to Wigginton's claim that he had a due process right to an explanation of the reasons for the denial of retention. We agreed with the District Court's rejection of that claim.

Next we considered the District Court's grant of summary judgment dismissing the first count of Wigginton's complaint. As noted above, the District Court reasoned that, since the testimony and arguments presented by the parties shed no useful light on the

meaning of the crucial and opaque statutory phrase "staff corps and departments," and since Wigginton as plaintiff had the burden of establishing all of the elements of his claim, Wigginton's failure to come forward with a persuasive showing that he came within the protective embrace of the statutory phrase meant that his claim "must fail."

But "[h]ere," we said, "we part company with the District Court." Wigginton, 205 F.3d at 517. And we undertook to explain why:

> On cross-motions for summary judgment, a plaintiff loses if he cannot produce evidence tending to establish a fact that, under the governing law, the plaintiff is required to prove in order to make out his cause of action. But that was not the situation at the point that the District Court granted summary judgment against appellant and in favor of appellees. When the District Court granted summary judgment, no determination had been arrived at as to what the governing law was. That is to say, neither the meaning of the phrase "staff corps and departments" as used in R.I. Gen. Laws § 30-13-3, nor the extent of the rights created by that statute if applicable, had been judicially resolved. And under those circumstances, there was no way to tell whether the evidence adduced by Major Wigginton would, if credited by a fact-finder, suffice as a matter of Rhode Island law to present the federal constitutional question whether state law rights had been abridged without due process. Accordingly, it was error to grant summary judgment on the first count in favor of General Centracchio and the State of Rhode Island. And it would , a fortiori, have been error to grant summary judgment in favor of Major Wigginton.

Id. at 517 (footnote omitted).

Having pointed out that the District Court had not arrived at a dispositive construction of R.I. Gen. Laws § 30-3-13, and that

-7-

without such a dispositive construction neither the Centracchio nor the Wigginton motion for summary judgment could be ruled on, we then acknowledged that we, too, could not arrive at a reliable construction of the statute. We explained the statute's ambiguity, and the lack of conventional resources to resolve that ambiguity, and we then went on to conclude that the sensible course was to ask the Supreme Court of Rhode Island to provide an authoritative construction of this esoteric statute:

> The general thrust of the first two sentences of the statute is apparent. Those persons who are "commissioned officers of the staff corps and departments . . . shall hold their positions until they have reached the age of sixty (60) years, unless retired prior to that time by reason of resignation or disability, or for cause to be determined by an efficiency board or a court martial." Major Wigginton -- a commissioned officer of RIANG who had not reached age sixty, and who had not been retired by reason of resignation or disability, or for cause -- would appear (absent any other contingencies attached to Major Wigginton's continued employment by Rhode Island law) to be within the protective embrace of the statute if he was an officer of the "staff corps and departments." But what that latter phrase means remains unclear. The first sentence of the statute -- "All commissioned officers of the staff corps and departments hereafter appointed, shall have had previous military experience, except chaplains, officers of the judge advocate general's corps, and medical corps officers" -- makes it plain that the phrase "staff corps and departments" connotes a cohort inclusive of, but broader than, "chaplains, officers of the judge advocate general's corps, and medical corps officers." How much broader? Broad enough to include Major Wigginton, an officer originally commissioned in the Military Police, later assigned as a Public Affairs Officer, and ultimately acting as an Education Officer? We derive no useful textual guidance from the two other provisions

-8-

of the statutory code governing RIANG that employ the phrase "staff corps and departments." Appellant and appellees, in their submissions to this court, have been unable to adduce any useful legislative history of R.I. Gen. Laws § 30-3-13 and we have found none. Further, the parties have not cited any pertinent decisions construing R.I. Gen. Laws § 30-3-13; and our research confirms that no court (whether a Rhode Island court, a federal court, or a court of another state) has, in a reported opinion, construed "staff corps and departments" as utilized in R.I. Gen. Laws § 30-3-13 (or, indeed, as utilized in either of the two other provisions of the statutory code governing RIANG that employ the phrase).

Thus, what we have before us is a Rhode Island statute which is a tabula rasa. Moreover, the state military code of which the statute is a part is a very special kind of state legislative enactment, for the code governs the Rhode Island aspects of a joint state-federal enterprise of great importance -- the Rhode Island Army National Guard. Under these circumstances, in order to achieve a responsible resolution of the issues presented by the pending appeal, it plainly would be better to have a current and authoritative construction of R.I. Gen. Laws § 30-3-13 by the Rhode Island judiciary than to have a conjectured prophecy by this court of what Rhode Island's courts might be expected to rule at some future time. Happily, the Supreme Court of Rhode Island has in place a procedure pursuant to which it "may answer questions of law certified to it by . . . a Court of Appeals of the United States . . . when requested by the certifying court if there are involved in any proceeding before it questions of law which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this court." Rhode Island Supreme Court Rules, Art. I, Rule 6, § 1. The quoted rule precisely describes the circumstance in which this court finds itself.

205 F.3d at 518-19 (footnote omitted).

-9-

Accordingly, invoking the Supreme Court of Rhode Island's procedure for responding to questions certified by other courts, we certified two questions, explaining the reasons for the certification of these questions in an "Order for Certification of Certain Questions to the Rhode Island Supreme Court," <u>Wigginton</u> v. <u>Centracchio</u>, 214 F.3d 1 (1st Cir. 2000), the Order for Certification having been crafted as a supplement to our opinion. The two certified questions were as follows:

> 1.      At the time Major Wigginton was discharged from RIANG, was he an officer of the "staff corps and departments" within the meaning of R.I. Gen. Laws § 30-3-13?

> 2.     If the answer to Question 1 is "Yes," does that signify that, pursuant to R.I. Gen. Laws § 30-3-13, Major Wigginton was (in the absence of resignation, disability, or dismissal for cause) therefore entitled to continue as a RIANG officer until age sixty, or would Rhode Island's statutory and/or decisional law attach any other contingency to Major Wigginton's continued status as a RIANG officer?

In our Order for Certification we elaborated on the certified questions:

> If the Supreme Court of Rhode Island determines that Major Wigginton was not, when discharged from RIANG, an officer of the "staff corps and departments" within the meaning of R.I. Gen. Laws § 30-3-13, that ruling would be dispositive of the litigation, adversely to Major Wigginton. If, on the other hand, the Supreme Court of Rhode Island determines that Major Wigginton, at the time of his discharge, was an officer of the "staff corps and departments" within the meaning of the statute, the Court of Appeals would wish advice on the further question whether R.I. Gen. Laws § 30-3-13 is to be taken to mean what its plain text connotes -- namely, that Major Wigginton, as an officer who has not

been retired by resignation or disability, or for cause, is entitled to continue in his RIANG status until he is sixty years old -- or whether Rhode Island's statutory and/or decisional law governing RIANG attaches any other contingency to Major Wigginton's continued status until age sixty as a RIANG officer.

214 F.3d at 3.

## III.   The ruling of the Supreme Court of Rhode Island, and its application to the pending appeal

The Supreme Court of Rhode Island responded to our Order for Certification in a unanimous and characteristically thoughtful opinion, written by Chief Justice Williams. The opinion is reported at Wigginton v. Centracchio, 787 A.2d 1151 (R.I. 2001). A copy of the opinion is annexed hereto as an appendix to this opinion.

In the opening two paragraphs of the opinion, Chief Justice Williams states:

> The United States Court of Appeals For the First Circuit has requested from this Court its opinion with regard to two certified questions so as to assist that court in resolving a wrongful termination claim under 42 U.S.C. § 1983. The First Circuit sought clarification of the meaning of G.L. 1956 § 30-3-13, a statute arguably entitling Maj. Eugene E. Wigginton (plaintiff), to remain in his position in the Rhode Island Army National Guard (RIANG) until the age of sixty. This Court reviewed the certification order and determined that the questions, as certified, required resolution of issues of fact, a task not permitted to us by Article I, Rule 6 of the Supreme Court Rules of Appellate Procedure. Thus, we issued an order modifying the original questions and setting forth the single question to which we would respond.

-11-

> "What is the meaning of the term 'staff corps and departments' contained in General Laws 1956 § 30-3-13?"
>
> If the plaintiff can establish that he was a member of the "staff corps and departments," he might have a constitutional or statutory basis upon which to contest his discharge. Absent a definition of the terms, no court is able to properly address plaintiff's claims.
>
> Having considered all relevant authorities, we respond that "staff corps and departments" is a vestigial term that cannot fairly be construed to have any meaning in the RIANG's modern military organization or any application to commissioned officers since 1956.

787 A.2d at 1152-1153 (footnote omitted).

The closing portion of the opinion is as follows:

### Historical Army Organization

The Court notes that the phrase "staff corps and departments" does not appear in any modern United States Army table of organization, or in the United States Code. To ascertain the origin of the term it is necessary to look to historical Army organization.

After the War of 1812, Secretary of War John C. Calhoun separated the War Department into two groups -- a departmental staff and the Army in the field (otherwise referred to as the "line"). See James E. Hewes, Jr., From Root to McNamara: Army Organization and Administration, 1900-1963 3 (Center of Military History 1975). The departmental staff consisted of the heads of individual departments (or bureaus) and each department performed a "specialized function or service." Id. Some of the staff departments were referred to as "corps," including the corps of engineers and signal corps. Some were referred to as "departments," including the JAG department, the adjutant general's department, the quartermaster's department, the subsistence department, the pay

-12-

department, the medical department and the ordnance department.

Thus, in the early nineteenth century, the term "staff corps and departments" referred to groups of officers performing a "specialized function or service." The scope of "staff corps and departments," however, evolved because of the continuous reorganization of the War Department. For example, in 1917, the quartermaster, subsistence and pay departments were consolidated into a single quartermaster corps. See Hewes, at 17, 21-22. One year later, the portion of the quartermaster corps that formerly was the pay department emerged as the finance department. See id. at 48. At the same time, a new tank corps was formed from members of the ordnance department and corps of engineers. See id. Next, the chemical warfare department and the chaplains department became independent departments. See id. at 51.

The organization of the RIANG mirrored the organization of the War Department. In 1929, commissioned officers of the RIANG were divided into two groups, the "staff corps and departments" and the "line." 1929 R.I. Nat'l Guard Adj. Gen. Ann. Rep. 19. The "staff corps and departments" consisted of the adjutant general's department, the quartermaster corps, the signal corps, the medical corps, the medical administrative corps, inspector general's department, the JAG corps, the ordnance department, the dental corps, the veterinary corps and the chaplains. See id.

However, by World War II, the terms "staff corps" and "departments" ceased to exist. See Hewes, at 90. Instead, the War Department began using the terms "technical services" or "administrative services." Id. at 97, 99. In 1942, there were seven technical services and four administrative services. However, only some of the technical or administrative service corps were formerly considered "staff corps and departments." In 1947, the War Department was officially renamed the Department of the Army. See id.

at 167.  At that time, the armed forces were reorganized into a centralized body under the Department of Defense similar to its present structure.  See id. at 310-11.

**Modern Army Organization**

Today, the Army is divided into the basic branches and the special branches.  See 10 U.S.C. §§ 3063, 3064, 3067.  There is no group of officers deemed members of the "staff corps and departments."  Further, branches that were historically members of the "staff corps and departments" are now found in both the basic and special branches of the Army.  When the Legislature enacted § 30-3-13 in 1956, the Department of the Army already had been reorganized.  Consequently, the "staff corps and departments" no longer existed.  We must assume then that the Legislature adopted the provisions governing the RIANG without intending to have its organization conflict with its federal counterparts.  This must be true since § 30-3-13 expressly provides that the Legislature intends for the RIANG to be "organized as to branch or arm of service into such federally recognized units, organizations, corps, departments, or otherwise as shall be authorized by the laws of the United States and the regulations issued thereunder."

**Conclusion**

In conclusion, we find that the term "staff corps and departments" is a vestigial term that cannot fairly be construed to have any meaning in modern military organization or application to presently commissioned officers.  This Court is constrained to make such a conclusion because history has wrought such substantial change to the organization and structure of the United States Army and the RIANG.  To conclude otherwise would permit the First Circuit to consider plaintiff's membership within a group that no longer exists.  We decline to permit such an absurd result.  See In re Estate of Gervais, 770 A.2d at 880 (citing Hargreaves v. Jack, 750 A.2d 430, 435 (R.I. 2000)).

-14-

In our Order for Certification we stated that "[i]f the Supreme Court of Rhode Island determines that Major Wigginton was not, when discharged from RIANG, an officer of the 'staff corps and departments' within the meaning of R.I. Gen. Laws § 30-3-13, that ruling would be dispositive of the litigation, adversely to Major Wigginton."  The Supreme Court of Rhode Island has found "that the term 'staff corps and departments' is a vestigial term that cannot fairly be construed to have any meaning in modern military organization or application to presently commissioned officers."  Since the term "staff corps and departments," in R.I. Gen. Laws § 30-3-13, has, as a matter of Rhode Island law, no "meaning in modern military organization or application to presently commissioned officers," appellant Wigginton's § 1983 claim, for which that statutory term is the foundation, is foreclosed.  Accordingly, the order of the District Court granting summary judgment will be **affirmed** (albeit not for the reasons given by the District Court).